MARGARETE STEIFF, Inc., v. BING.

(District Court, S. D. New York. July 20, 1914.)

1. TRADE-MARKS AND TRADE-NAMES (§ 68*)—"UNFAIR COMPETITION."
  "Unfair competition" consists in selling goods by means which shock judicial sensibilities.
  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*
  For other definitions, see Words and Phrases, vol. 8, pp. 7174, 7824.]

2. TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNLAWFUL COMPETITION—JUSTIFICATION—DECISIONS OF FOREIGN COURTS.
  It was no defense to a suit in the federal courts for unlawful competition in the sale of stuffed animal toys manufactured in Germany that defendant's acts were not violative of the German law, which gives no protection to simulation of articles unprotected by patent or some form of copyright.
  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 68*)—UNLAWFUL COMPETITION—EXCELLENCE OF PRODUCT—NOVELTY.
  Excellence of a new product or novelty affords no ground for preventing competition unless it is unfair and tends to palm off the goods of defendant for those of complainant.
  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION.
  The borrowing by a newcomer in trade from the first maker of something not necessary to the excellence of the product nor required for functional perfection, but which is almost invariably cleverly calculated to attract and fix the attention or please the eye of the careless, is what constitutes unlawful competition; but the deviser and maker of an unpatented and uncopyrighted novelty may not object to the making of a competing novelty and the sale thereof in fiercest competition, so long as what competes is the essential thing stripped of all those attributes which do not make the article any better, but enable or assist a careless public to remember what the thing is.
  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 72, 73; Dec. Dig. § 70.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION—ANIMAL TOYS.
  Where complainant had built up a large business in the manufacture and sale of stuffed animal toys, manufactured with artistic cleverness to represent the natural animals through the use of photographs, etc., defendant was not entitled to manufacture and sell competing toys made from toys manufactured by complainant as models, but was entitled to manufacture and sell such competing toys so long as they were manufactured from defendant's own photographs and models, though of the same materials, coloring, etc.
  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 72, 73; Dec. Dig. § 70.*]

In Equity. Suit by Margarete Steiff, Incorporated, against John Bing. Decree for complainant.

Hans von Briesen, of New York City, for complainant.
Archibald Cox, of New York City, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOUGH, District Judge. This case has been heard on complainant's motion for injunction pendente lite, the motion granted, and order affirmed on appeal. 206 Fed. 900, 124 C. C. A. 560.

An action closely related (being against defendant's vendee for reselling the same articles concerning the original sale of which complaint is made herein) has also been to the Circuit Court of Appeals, and temporary injunction granted. Steiff v. Gimbel, 214 Fed. 569, 131 C. C. A. 21, April 7, 1914.

If complainant on this hearing confined its prayer for relief to a continuance of the preliminary injunction with a provision for an accounting, it would be enough to refer to the cases already decided and grant the decree. But by evidence and argument complainant demands so much more than it already has that the matter requires consideration differing from that heretofore necessary.

The Steiff corporation manufactures in Germany, and sells the world over, a kind of toy, which by its origin causes a certain sympathy for its maker. Margarete Steiff was a hopeless cripple who made from felt and plush and stuffing imitations of animals and men, with such mechanical cleverness, some artistic ability, and so much insight into the childish mind, that from her sick room went out a stuffed toy or doll which had not long to wait for enthusiastic welcome in nurseries of every land. Miss Steiff died in 1909 at the age of 63, before which time the business of toy and doll making was incorporated, and occupied (and still occupies) the time and energy of her several nephews; who appear now to own and manage it. The volume of business is illustrated by the statement that within a short time (apparently a single year) $1,000,000 were received for "teddy-bears" alone.

However unusual in origin this business is, it has long been like any other commercial enterprise, and can claim no immunity from competition, other than such as is accorded to other concerns, whose foundations were not laid by a crippled aunt of singular ability.

Bing, the defendant, is an American citizen, and also the salaried agent of another German corporation which has for a long time made toys, but until lately not stuffed animals.

In the spring of 1913, Bing determined to compete with Steiff in the American market for toys of this description. At that time the Steiff toys were and long had been well known in the United States, commanded a good price, and although some few stuffed toys were known as the product of other manufacturers, it is I think true that the average buyer for retail toy sellers regarded the Steiff stuffed animals and dolls as almost if not quite in a class by themselves, so nearly did they monopolize the market.

Bing Bros., the house for which defendant is agent, is a large concern, with a widely extended business, and any competition from them would probably be serious; it is on this hypothesis only that I can explain the vigor with which this litigation has been pressed.

When defendant undertook competition, however, his principals had not actually begun the manufacture of what they wanted to sell. Therefore a number of Steiff toys were procured; complainant's tags and marks partially removed, and the public invited to order from

Bing articles like the Steiff specimens shown—and at a considerable reduction from Steiff prices.

I am not satisfied that Bing or his clerks told customers that Bing Bros. had made those samples. Customers were buyers for stores, and such tales would have been silly and useless. Silly because many of the samples (e. g., elephants) still bore marks proclaiming to the practiced eye their Steiff origin; and useless because such buyers did not care who made the samples if Bing filled the order as per sample. But defendant did promise to make and sell something, using as a basis therefor not his own observation of nature, nor his own invention, but merely the mechanical skill of a journeyman in copying what complainant had perfected, and in so doing copying also some things which did not pretend to imitate nature, but were merely fanciful creations of complainant—e. g., the piebald coloring of the so-called "Circus-Horse" which Bing promised to sell to Hauser.

[1] "Unfair competition" consists in selling goods by means which shock judicial sensibilities; and the Second Circuit has long been very sensitive. These proceedings of Bing were enjoined, but in carefully narrowed language, as follows: (1) From selling, offering for sale, or filling orders with any toy animals or similar articles which in unnecessary details as to marking, decoration, wheels, and the like, and in detail of form and construction, are reproductions and duplicates of the toy animals heretofore originated and made and sold by the complainant. (2) From exhibiting toy animals made by the complainant as samples of toys made by his principal and sold by him.

Though as above stated, I do not believe (after a full hearing) that defendant made or caused to be made the false representations as to origin of samples, of which he was accused, and (apparently) convicted —on affidavits, yet it is impossible to approve the method of competition chosen by him and his principals.

[2] It is an excuse, but not a justification, that what he did would apparently have passed muster with the German courts, which give no protection to simulation of articles unprotected by patent or some form of copyright. Before 1913 there had been litigation in Germany between the Steiffs and Bings, and, while it is described in a very unprofessional manner in the evidence, I think it clear that in result the Bings considered themselves free to use Steiffs' unpatented or "unregistered" products in any way they chose.

The existing injunction against such use of the Steiff product is the penalty for that mistake. That error had been committed the Bings admitted, canceled (it is said) as far as possible the orders of 1913 based on the Steiff samples or models, and undertook to produce, by studying nature, animals of their own, in time for the 1914 market.

There are in evidence now 18 specimens of defendant's 1914 make, and a catalogue of what the Bings now manufacture. The catalogue list covers all the specimens referred to, and more; but shows an output far less varied than that of complainant. Defendants have not ventured upon dolls at all, nor have they made animal-like figures dressed in human clothing (e g , the "cat-baby," the "bear-lady") which are set forth in great variety in Steiff's catalogue.

The exact point litigated now is whether defendant can sell his principals' 1914 product.

The bill charges that:

The Steiff animals "are not a mere mechanical output, but each kind of animal and each animal itself is given particular attention, so that it may be in itself an artistic and individual representation of the animal it is supposed to represent."

It is also said to be "a comparatively easy matter for a competitor, without investing any capital or using any ingenuity to dismember one of your orator's animals and mechanically duplicate each part thereof."

The prayers for relief now insisted on are that defendant be enjoined from selling "any toy animals which in appearance are the same or substantially the same as the corresponding toy animals sold" by complainant; and also from "doing any act * * * whereby the trade or the public may be likely to believe that toy animals of the style, configuration, appearance, color and get up (of Steiffs') can be lawfully made and placed upon the market by any person, firm or corporation other than complainant."

I think this is a far more extreme claim for protection from competition called unfair, than has ever yet been made even in this circuit, and can be shown by complainant's own evidence to amount to a demand for monopoly.

[3] The bill itself declares each Steiff animal to be an "artistic and individual representation" of the original, and the evidence shows that the living model is studied, photographs taken, and patterns made, in order that when plush, felt, or velvet is cut to the pattern and sewn together, stuffing will fill out the skin (so to speak) into an attractive verisimilitude of the model. It may be safely said that, within the limitations of the materials employed, Miss Steiff and her successors have come remarkably near to nature, and often produced something not unworthy to be called artistic. But that all this affords no reason for either protection or monopoly is very clear. The excellence of a new product may afford an explanation of fierce competition therein, but mere excellence or novelty affords no ground whatever for preventing that competition if the fight be fair.

[4] What makes the fight unfair is always the borrowing by the newcomer from the first maker of something not necessary to excellence of product, not required for functional perfection, yet almost invariably cleverly calculated to attract and fix the attention, or please the eye of the careless. But the deviser and maker of an unpatented and uncopyrighted novelty cannot object to having any one make and sell that novelty in fiercest competition, as long as what competes is the essential thing, stripped of all those adjuncts or attributes, which like the name of "Uneeda" biscuit, or the shapes of Rushmore's flare front light and the Klaxon horn, do not make the essential thing any better, but enable or assist a careless public to remember what the thing is.

It is therefore of prime importance in any case of alleged unfair competition to ascertain what is the essential thing dealt in by both

parties, and to separate essentials from accidents, functions from adjuncts, and advertising from everything.

Name, color, form, and shape are rarely essentials in function, yet they may be, and are here. In so far as the Steiff animals copy or reproduce nature, so far they can claim no protection, for every one can do that.

[5] The final inquiry is, therefore, What have Bing Bros. done since acquiescing in the temporary injunction herein? Have they merely "dismembered" complainant's animals and "mechanically duplicated each part thereof"? I see no reason to think so; on the contrary, they have employed their own artists, taken their own photographs, made their own models; and if (as is the case) many of the resultant figures look just like the corresponding Steiff animals, the reason is that both parties have attained the same degree of success in doing the same essential thing, e. g., imitating a horse in stuffed plush.

Indeed, in some instances (e. g., elephants) the Bing product is plainly nearer nature than is Steiff.

Complainant under our law was right in complaining that Bing used Steiff samples to sell potential Bing manufactures; but when claim is made that, because Steiff has produced artistic plush statuettes of certain animals, no one else can do the same, the monopolistic position is clearly seen.

If defendant had undertaken to rival the Steiff Company in grotesques, comical dolls, or singular variants from normal animals, a different and perhaps closer question would have arisen; but I am sure that both parties have equal right to copy nature, and both are now doing it.

That one is a pioneer and the other a follower is legally unimportant; indeed, as long as nonfunctional peculiarities are not poached upon, the labor and discovery of the pioneer is for the benefit of the public, even a competitor.

The existing injunction will be in the main continued and made permanent; the final decree will also specifically refuse any further or other injunction, and adjudge that none of the so-called 1914 exhibits unfairly compete with complainant.

I am not advised whether an accounting is now wanted. If one is demanded, the question of costs will await final decree; if accounting is waived and final decree now entered, defendant will pay the costs.