BUCKEYE INCUBATOR CO. et al. v. MODEL INCUBATOR CO. et al.

(District Court, W. D. New York. November 15, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ⬡70(1)—UNFAIR COMPETITION—WHAT CONSTITUTES.

After complainants had advertised a coal-burning brooder stove, and established agencies through which an appreciable number of stoves had been sold, defendants, one of whom had designed a similar stove, began the sale of stoves which were copies of those sold by complainants; the patterns being taken from complainants' stove. Complainants' stove, save in respect to the addition of a door at the base, resembled an earlier patented stove. *Held* that, though on the door at the base, where complainants had placed their name, defendants marked their stoves with their name, nevertheless their copy of the characteristic features of complainants' stoves in all nonessential elements amounted to unfair competition; complainants' stove having been first advertised in a market already created.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ⬡70(1).]

2. TRADE-MARKS AND TRADE-NAMES ⬡70(1)—UNFAIR COMPETITION—COPY OF NONESSENTIAL DETAILS.

In such case, those portions of the stove necessary to its performance of the work intended, though importing to it a distinctive appearance, are not mere nonessential details, the adoption of which would constitute unfair competition; but the base, which was unnecessary for the discharge of the functions of the stove, was a nonessential detail, a copying of which would constitute unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ⬡70(1).]

In Equity. Suit by the Buckeye Incubator Company and another against the Model Incubator Company, and others. Decree for complainants.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Staley & Bowman, of Springfield, Ohio, for plaintiffs.

J. Wm. Ellis, of Buffalo, N. Y., for defendants.

HAZEL, District Judge. Action for unfair competition in trade, involving a coal-burning brooder stove manufactured by the Buckeye Incubator Company for use in connection with a canopy or hood. Both complainants' and defendants' stoves, which resemble each other, consist of cone frustum parts of approximately equal height, symmetrically proportioned, and combined with a base and supporting arm for a thermostat.

The principal defenses are that one Adair, an employé of the defendant, Model Incubator Company, was the first to design the stove in question; that he made a pencil sketch of it in March, 1914, with the upper and lower sections tapered, and in the following September a larger drawing, with the upper part of the stove straight, a stove corresponding to the original sketch being manufactured in May, 1915; that complainants have not established that their stove acquired a reputation before defendants' stoves were marketed; and that there is no proof of fraudulent copying of ornamental features, as distinguished from mechanical features.

There was testimony on behalf of complainants tending to show that Samuel B. Smith, as early as February, 1915, designed the stove or coal-burning hover in question, and afterwards established selling agencies in Philadelphia and elsewhere; that in February and March of the same year he advertised it in the American Poultry Advocate, and in other journals and magazines, illustrating such advertisements; and on cross-examination of the witness Cugley it appears that Smith, who manufactured the stoves at the outstart, delivered to Cugley & Mullen Company, selling agents, in the months of February, March, and April, 1915, about 119 stoves, which were sold in the Philadelphia territory, and that subsequently, on August 5, 1915, the Buckeye Incubator Company acquired the sole selling rights from Smith and began more extensive advertising of the hover.

Defendants contend that the evidence is unconvincing as to the acquirement by the Smith stove of any general reputation or good will, either through advertising or sales, in February and March, 1915, and that, therefore, an action for unfair competition, because defendants marketed an imitative stove or hover, is not maintainable. Defendants' witness Adair testified that he originally designed a stove for brooders in March, 1914, and in corroboration produced two pencil sketches, Exhibits B and C, which are essentially similar to complainants' adaptation. He claims to have exhibited one sketch (Exhibit B) to the president of the Model Incubator Company, but the latter gave no testimony in relation thereto. In September, 1914, a large drawing was made of the Adair conception, but such drawing does not have the tapered upper section of the original design. In May, 1915, a stove was made by Adair, who was then in the employ of the Model Incubator Company, in accordance with his design model type, corresponding in appearance to complainants' stove, and in June, 1915, he shipped the same to Browns Mills. He testified that he was not aware of the

Smith advertisements, and that he had no knowledge of complainants' stoves until May, 1915, when the Model Incubator Company was negotiating with the Certified Farms Company for the purchase of some property upon which there were some Smith stoves. He practically admitted, however, that in August of that year he directed his workmen and pattern maker to construct a stove like the Smith stove in size, shape, and appearance, with the result that defendants adapted such stove, resembling complainants' with respect to details, appearance of base, and thermostat arrangement, to their use.

On July 4, 1916, mechanical patent No. 1,189,301, for stoves, was granted to Smith, and since then an interference has been declared by the Patent Office with the application of Adair, which has not yet been determined. Later on, both Smith and Adair filed applications for design patents for their stoves, in which interference proceedings are likewise pending.

It seems to me that the first inquiry is whether complainants' stove acquired a reputation prior to the time defendants manufactured and sold an imitative stove, and the second, whether the asserted characteristic features of complainants' stoves are mechanical.

[1, 2] 1. There are many adjudications, of which Rathbone, Sard & Co. v. Champion Range Co., 189 Fed. 26, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258, is a prominent example, which apparently hold that an action for unfair competition is not maintainable where an unpatented article, in the absence of a general reputation or a market therefor, is imitated and appropriated, if the indicia of the original designer are removed. This is on the theory that the simulation would not deceive the buying public, as the article is unknown to it. These adjudications, however, are not strictly applicable to the present situation, for Smith not only advertised his stove in magazines and periodicals in February and March, 1915 (some of which were produced, but not offered in evidence), but established agencies through which an appreciable number of his stoves were sold prior to August, 1915, at which time he gave exclusive vending rights to the Buckeye Incubator Company. Even though Adair originated his design in March, 1914, he did not manufacture and vend stoves corresponding thereto until June, 1915, a time when Smith had already marketed his stove and to an extent popularized it by advertising.

The defendants have not added to their stove any ornamentation or distinguishing marks, but have made a copy of complainants.' They have copied its form, height, proportion of converging sides, base, sliding door, vertical rods, and projecting thermostat arm—all the essential features of complainants' vendible article. Indeed, it was admitted, as heretofore stated, that in making their stoves patterns were taken from complainants' castings, regardless of the original Adair sketch or drawing. In this situation, and upon the point under discussion, the principle enunciated by Judge Hough in Steiff v. Bind, 215 Fed. 204, is of interest. There the complainant manufactured toy animals, reproduced from photographs of living animals; but the defendant, in making his toy animals, did not make them from photographs, instead he used complainant's toys as models, and it was held that to

thus imitate the product of another, which had become known to the public, constituted unfair competition.

It must be conceded that the Exhibit Woodbury patent No. 34,475, substantially embodies the configuration of the stove in question above its base; its principal distinguishing feature being a low base having no door. Whether or not complainants' design, or defendants' design, for that matter, involves invention, in view of Woodbury, is a question that I am not required to decide on this record.

The fact that defendants have copied the characteristic features of complainants' stove does not, of course, justify the conclusion that they are unfairly competing, unless the combination relates entirely to nonfunctional elements. There was much discussion pro and con with reference to this, and upon consideration of the Smith mechanical patent, in connection with the prior art, I have reached the conclusion that the shape, proportions, and projecting support for the thermostat of the Smith stove were necessary mechanical expedients. These features, though in connection with the base imparting a somewhat distinctive appearance, were in the main necessary in order to secure proper operation of the brooder. Such was also the view of the Patent Office when the applications for design patents were inspected.

The claims of the Smith patent must be construed in connection with the specification and drawings, and it is not believed to be limited to the thermostat feature, as distinguished from the sectional parts of the stove above the base. Simplicity and compactness were necessary in a brooder stove of this description, and no doubt were secured by tapering the upper parts and causing them to converge from the center. The Smith file wrapper and contents show that the tapering form of the stove sections in combination with the base was not regarded as patentable in view of the prior art; and the amendments that were made to the specification and claims seem to bear out defendants' contention that the only novel feature was in the flat top of the stove, which permitted arranging the valve and fuel openings eccentrically. Although no expert witness has testified as to the manner in which these parts function or operate, the said file wrapper does not support the view that the patent relates simply to the thermostat feature, regardless of the cone frustum parts. It is no doubt true that no mechanical principle is involved in the specific shape of the supporting arm for the thermostat; but there was no novelty in such arrangement, and no distinctive appearance was imparted to the stove by it. A thermostat very much like complainants' is found in the Sheer patent in evidence.

Importance is however, attached to the specific type of base in complainants' stove, and the arrangement of the ash pit and sliding door. None of the prior structures shows a base of similar shape, nor is it shown that such shaping was necessary to the performance of its functions. The defendants, in copying and marketing such base with its sliding door in connection with cone frustum sections of equal height, have imparted to their stove an appearance so similar as to unfairly compete with complainants' stoves.

It is true that defendants have marked their stoves in relief on the sliding door with the words "Model," "Model Incubator Company, Buffalo, N. Y.," and "Correct," "Correct Hatcher Company, Leesville, Ohio," while on the sliding doors of complainants' stoves are impressed the words, "Standard Company, Cleveland, Ohio. Shake ashes every 12 hours. Standard Colony Brooder." But these markings of the corporate names of the makers, or of arbitrary designations alone, do not sufficiently differentiate the competing products, and as the only feature entitled to protection in complainants' stove is the specific external shape or form of the base, which defendants have imitated and adapted to their stoves, a decree, with costs, may be entered enjoining such further use.