**SCHWINN BICYCLE COMPANY, an Illinois corporation, Plaintiff,**

v.

**DIVERSIFIED PRODUCTS CORPORATION, Defendant.**

and

**Sears, Roebuck and Co., Intervenor.**

**No. 88 C 7176.**

United States District Court, N.D. Illinois, E.D.

April 30, 1990.

Donald G. Mulack, Richard L. Reinish, Malcolm McCaleb, Jr., Michael J. Allen, Keck, Mahin & Cate, Floyd A. Mandell, Julie O. Petrini, Katten, Muchin & Zavis, Chicago, Ill., for plaintiff.

Jeffrey B. Lieberman, Kenneth K. Dort, Schuyler, Roche & Zwirner, Chicago, Ill., Harold Birch, Alan Cooper, Alan Cantor, Rodger L. Tate, Banner, Birch, McKie & Beckett, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Schwinn Bicycle Company ("Schwinn") charged defendant Diversified Products Corporation ("DP") with trade dress infringement violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), relating to exercise bicycles, and Sears, Roebuck and Co. ("Sears"), DP's biggest customer, intervened. Plaintiff claims that its exercise bicycle, the Air–Dyne, created the market for dual-action air-resistance exercise bicycles, that the Air–Dyne design is inherently distinctive and also has acquired secondary meaning, and that the design of

the DP Air Gometer is substantially similar in overall effect and creates a likelihood of substantial confusion. Magistrate Rosemond, after a lengthy preliminary injunction hearing, disagreed, and he also thought the design was functional. Schwinn objected to the magistrate's recommendation and to virtually every finding of fact. Those objections require this court to engage in its own *de novo* determination. We have done so—a not inconsiderable task as the objections and briefs alone cover almost 300 pages.

We largely agree with the magistrate but we do not believe it is necessary to track each of his findings or to deal specifically with each of the fulsome contentions of the parties. Rather, we will sketch briefly why we believe plaintiff is not entitled to a preliminary injunction. The record establishes the following:

Schwinn began marketing the Air–Dyne in 1978. The product was different from other exercise bicycles in that "in addition to exercising the rider's legs like other conventional exercise bicycles, it also enables the rider to exercise his/her upper body by moving the long handle arms back and forth with his/her arms and shoulders. The prototype had air vanes (resembling the blades on an ordinary free-standing fan) mounted on a front bicycle wheel to provide resistance to the pedals and handle arms as the wheel turned which, consequently, required the rider to expend energy ('exercise'). Thus, the resistance was generated by 'air displacement'." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1178 (7th Cir.1989) (*"Ross"*). Further, the wheel, pedals and arms are all connected, thus permitting the wheel to be turned by leg action or arm action or both together. Despite a relatively high price ($600–$700) Schwinn, after a somewhat slow start, has increased its sales so that it has a small but growing part of the market. It has had patent protection on a linkage mechanism connecting the foot pedals to the handle arms, which allows the handle arms to spin the pedals and, in turn, drives the front fan wheel. That appears to be a significant reason why others have been hesitant about entering what Schwinn describes as the market for dual-action air-resistance exercise bicycles.

Others recently have begun marketing exercise bicycles that Schwinn claims infringe its Air–Dyne trade dress. One was Ross Bicycles, which apparently engineered around the linkage patent and then largely copied the plaintiff's design. Another was DP, which also engineered around the linkage patent. Schwinn sued Ross Bicycles for trade dress infringement and sought a preliminary injunction. The magistrate recommended against an injunction, the district court disagreed and entered an injunction, the Court of Appeals reversed on a number of legal grounds, and the parties thereupon settled (Ross Bicycles was by then in bankruptcy). In the meantime, Schwinn was pursuing a claim against DP here.

Schwinn's claim to preliminary relief is based upon a number of assertions that, separately, are unremarkable. It contends, quite reasonably, that trade dress protection relates to overall appearance, not to a separate analysis of individual components; that the focus is upon the likelihood of consumer confusion; that evidence of actual confusion is a powerful indicia of a likelihood of confusion; that the public need not be aware of the source so long as it associates the trade dress with a single source; that trade dress protection can be based on the likelihood that potential consumers familiar with plaintiff's product will be confused into believing that defendant's product is in some way related to or affiliated with the source of plaintiff's product; and that defendant has the burden of proving functionality. Each of those propositions is either undisputed or has respectable support. Here, however, the cumulative effect is less than a sum of the parts.

We turn first to some general concepts. Plaintiff claims a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides a "federal remedy for the particular kind of unfair competition that results from false designation of origin or other false representation used in connection with the sale of a product." *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1331 (8th

Cir.1984). Anyone can freely use ideas and concepts that have not been removed, by legal protections, from the public domain. Since *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), it has been accepted that state unfair competition law cannot prevent even the copying of an unpatented and uncopyrighted article, at least so long as customers are not otherwise misled as to source. Section 43(a) has, however, provided a federal basis for protection of trade dress.

We are dealing, then, with a statutory protection against a form of unfair competition, and unfair competition is a somewhat amorphous concept that traditionally has served as a means to prevent competitive "dirty tricks" or the selling of " 'goods by means which shock judicial sensibilities.' " 1 J. McCarthy, *Trademarks and Unfair Competition,* § 1:2 at 12 and § 1:6 at 17 (2d ed. 1984) (quoting *Margarete Steiff, Inc. v. Bing,* 215 F. 204 (S.D.N.Y. 1914)). Intentional wrongdoing, which in trade dress means "palming off," has always been a primary focus of unfair competition, and state law has, on occasion, refused to accord protection in the absence of an intentional wrong. *See, e.g., Sears, Roebuck & Co., supra,* 376 U.S. at 227 n. 2, 84 S.Ct. at 786–87 n. 2. Federal protection extends further. While an owner of a trademark has a right to protect his reputation and good will, the paramount interest promoted by the Lanham Act is the right of the public not to be confused about the origin of goods. *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir.1976). Innocently caused confusion, therefore, is within the reach of the Lanham Act. The absence of deceptive intent is, however, a factor to be considered in balancing the rights of the allegedly wronged competitor, the interest of the public in not being confused and the interest of the public in unfettered competition.

Schwinn has neither a design patent nor a mechanical patent providing protection against defendant's product. It must, therefore, establish that the trade dress of its Air–Dyne is inherently distinctive by virtue of being a distinctive, identifying mark (which it clearly is not), or that it has acquired secondary meaning and consumers are likely to be confused about the source of the product, and it must successfully defend against defendant's contention that the overall Air–Dyne design is functional. *Ross, supra,* at 1182–83. Front wheel exercise bicycles have been long on the market and, the evidence indicates, preferred over other configurations. Schwinn was, however, the first on the market with a "fan bike," which permitted the rider to exercise both arms and legs through a connected linkage. With the help of the Hooper patent, Schwinn had the market for that kind of exercise to itself for approximately a decade. That raises a concern that plaintiff is using this suit primarily to parlay its marketing advantage into a product monopoly, *see Ross, supra,* at 1184 n. 16, rather than to prevent consumer confusion. The protection of a competitive advantage stemming from the exclusive possession of a popular design can come, however, only from a design patent. *W.T. Rogers Co., Inc. v. Keene,* 778 F.2d 334, 348 (7th Cir.1985).

We accept, for now, the notion that there has been some showing of secondary meaning because there has been a showing of some likelihood of confusion, and that showing rests primarily upon a showing that some people have, to some extent, been actually confused. But what is the nature of that secondary meaning and what is the extent of the likely confusion?

This is not a "palming-off" case. The defendant was not seeking to cause consumers to believe that its product came from Schwinn and thus hoping to capitalize on plaintiff's reputation and good will. Clearly it was hoping to take advantage of the public interest in dual-action fan bikes created by Schwinn, but it had a right to enter that market (as more fully discussed hereafter). But there is some public identification of dual-action fan bikes with Schwinn, or at least with the source of the Air–Dyne, as there cannot be confusion in the absence of secondary meaning, and there was some evidence of actual confusion here.

Some consumers may associate a particular trade dress with a single source (secondary meaning), but that source cannot complain if another uses that trade dress but dispels any possible confusion by advising consumers of the actual source. That is a function of logos and trademarks. The Air–Dyne retails for approximately $700. The Schwinn name and Air–Dyne are prominently displayed on plaintiff's product. The defendant's Air Gometer retails for approximately $400. The defendant's logos, "DP" and "Fit for Life," and the name "Air Gometer," are all prominently displayed on defendant's product. Confusion is rare when logos designating origin are prominently displayed on expensive equipment. *See Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1446 (Fed.Cir. 1984); *Sunbeam Corp. v. Equity Industries Corp.*, 635 F.Supp. 625, 633 (E.D.Va. 1986). But, as we have said, there was some actual confusion. Consumers may not pay attention to designations of origin on other dual-action fan bikes or, when they do, they may think that other dual-action fan bikes may possibly be a private label brand manufactured or licensed by Schwinn or the manufacturer of Air–Dyne.

In the circumstances, however, the confusion, and the likelihood of confusion in the future, are circumscribed. The evidence indicates that some consumers associate Schwinn or Air–Dyne with the concept of a dual-action fan bike. Schwinn does not, however, claim that its trade dress protection extends generally to dual-action fan bikes. It emphasizes that trade dress relates to overall image, it eschews reliance upon individual components, and, at the same time, it suggests changes in individual components, which, it asserts, would permit defendant to compete in the dual-action fan bike market. One suggestion is to redesign the Air Gometer so the wheel is in the rear rather than the front. Another is to contain the front wheel, the bicycle drive chain and a portion of the arms within an enclosure which disguises the chain and the wheel (PX 88–92).

The concept of trade dress is somewhat elusive, and particularly so here. The image is created by a combination of components. Plaintiff seems to contend that any front wheel dual-action fan bike which has the wheel enclosed in a circular cage is likely to cause confusion about origin. We agree with the magistrate, however, that a front wheel design is aesthetically functional. The evidence supports the view that the public strongly prefers the wheel in front, and, accordingly, that design feature is necessary for effective competition. *See Ross, supra,* at 1191. If the wheel is in front, says Schwinn, then defendant should substantially add to its enclosure so as to camouflage the wheel and chain. But, in so contending, plaintiff is essentially insisting that defendant design around plaintiff's concept of containing moving parts in enclosures of related size. It wants defendant to add considerable additional material for no purpose other than to change the overall image even though any manufacturer of a dual-action fan bike would have to have (for safety reasons) an enclosure of the wheel and chain. We think that enclosures related in size and configuration to those moving parts are functional. *See Ross, supra,* at 1188–90; *Vaughan Manufacturing Co. v. Brikam International, Inc.,* 814 F.2d 346, 349–51 (7th Cir.1987).

Defendant has, to a considerable extent, designed around the non-functional aspects of plaintiff's trade dress. A dual-action front wheel fan bike necessarily has a seat, long arms connected to pedals, an enclosed drive chain, an enclosed wheel with slots, rests for the feet, instrumentation, and a means of moving the bicycle. The Air–Dyne presents a traditional look, with a chrome metal wheel cage, chrome trim, swept-back arms, a separate and relatively small metal chain enclosure, foot rests at about the center of the wheel, a raised instrumentation panel, and small wheels (to move the exerciser) connected to the wheel cage. The Air Gometer has a far more modern look, with a smaller wheel enclosed in an off-white plastic enclosure, straight arms, a larger plastic chain enclosure which is tied into the wheel enclosure, higher foot rests, lower instrumentation, and rollers on the bottom frame to move the exerciser.

We think that the Air Gometer trade dress is considerably different from the

Air–Dyne trade dress and is as far as Schwinn can expect defendant to go. Defendant has not (unlike Ross) copied plaintiff's design. It has designed around the Air–Dyne. It could, of course, go further, until the design was not competitive or a consumer would not know that the Air Gometer was a dual-action fan bike unless he was told. There will be, for awhile, some consumers who will wonder whether Air Gometer has some relationship to Air–Dyne because they associate Air–Dyne or Schwinn with dual-action fan bikes—or they may even assume that there is some affiliation. It is not a particularly significant confusion and it flows not from any intentional deception but from the entrance of another competitor into the marketplace with a serviceable and considerably less expensive product. The likelihood, indeed actuality, of that level of minimal confusion is not, we believe, a basis for invoking Section 43(a). The public's interest in free competition far outweighs the public's interest in avoiding that minimal confusion. Schwinn's likelihood of prevailing appears slight and the harm both to the defendant and to the public interest of excluding the Air Gometer from the market is considerable. The preliminary injunction is denied.