**HAAN CRAFTS CORP., Plaintiff,**

v.

**CRAFT MASTERS, INC. and Jerald W. Chitwood, Defendants.**

Civ. No. L 87–95.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

March 3, 1988.

As Amended Nunc Pro Tunc March 30, 1988.

John McNett, James M. Durlacher, Indianapolis, Ind., Jerome L. Withered, Lafayette, Ind., for plaintiff.

Richard T. Heide, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff's Motion for a Preliminary Injunction was heard in open court in Lafayette, Indiana, on September 18, November 12, and November 13, 1987, respectively. At this court's request, the parties have since filed post-preliminary injunction hearing briefs. Based on the information and arguments presented, both orally and in writing, this court now makes findings of facts and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. For reasons set forth below, plaintiff's motion is hereby GRANTED in part and DENIED in part.

### I.

This court has jurisdiction to entertain this cause of action by virtue of 28 U.S.C. § 1331 which gives district courts original jurisdiction of all civil actions arising under the laws of the United States. Plaintiff's amended complaint includes two federal law counts. Plaintiff claims a violation of the Lanham Trade–Mark Act, Title 15 U.S.C. § 1125(a) and copyright infringement under Title 17 U.S.C. § 501.

This court also has jurisdiction over plaintiff's unfair competition claim under Title 28 U.S.C. § 1338(b). Plaintiff's other state law claims allege (1) a violation of the Indiana Uniform Trade Secrets Act, IC 24–2–3–1 *et seq.* and (2) tortious interference of a business relationship. This court has pendant jurisdiction over those state law claims.

### II.

Plaintiff Haan Crafts, Inc. is a mail-order catalog business owned and operated by Robert and Ellen Haan of West Lafayette, Indiana. The company, which was incorporated in 1978, designs, manufactures and sells sewing kits to junior and senior high schools for home economics classes. Most of the sewing kits are for stuffed animals, stuffed balls, "sweat" outfits, jackets, and athletic bags. A new catalog is published annually to coincide with the start of the school year. Many items reappear from year to year. Others may be deleted or added each year. Haan Crafts is one of approximately fifteen such companies which do business on a national basis.

Defendant Jerald W. Chitwood was employed as controller of Haan Crafts from August 24, 1985 to March 6, 1987. Robert Haan testified that Chitwood left because Haan fired him in late January of 1987, giving him several weeks' notice before he had to actually leave. On April 20, 1987, less than two months after he left, Chitwood started defendant company, Craft Masters Inc. The company was incorporated on May 20, 1987. Chitwood's only contact with Haan Crafts after March 6, 1987 was approximately three weeks later when he was called by Robert Haan who needed help with the Haan Crafts' computer system. Chitwood at that time had in his possession the Haan Crafts' general ledger software which he then brought to the company and helped load into the system.

Craft Masters, Inc. is also a mail-order business, specializing in sewing kits for junior and senior high school home economics classes. The company's first catalog came out immediately prior to the 1987–88 school year. Craft Masters, Inc. sells sewing kits for stuffed animals, "sweats", athletic bags, stuffed balls and a few miscellaneous items. In any case, the company's product line is virtually identical to

Haan Crafts' product line. In fact, the finished products of many of the Craft Masters kits are basically indistinguishable from the finished products of the Haan Crafts kits. For example, both companies offer stuffed footballs and basketballs made of "furry" material which can be ordered (as both companies' catalogs suggest) in the client's school colors. Both companies offer kits to make sweatshirts and sweatpants. In particular, both offer sweatshirts with a single contrasting horizontal band across the chest and a single contrasting band on each sleeve. There are several other similar product offerings: gym bags with the respective company logo, similar stuffed animals, furry dice, furry feet, and aprons. There is no question that the product lines and many of the finished products are nearly identical.

Apparently, at least two of the items which were new to the Haan Crafts 1987–88 catalog appeared in the Craft Masters 1987–88 catalog. These were (1) a pair of 11–inch stuffed feet and (2) the sweatshirts with bands on the chest and sleeves.

Plaintiff introduced into evidence certificates of copyright registration for its catalogs and some of its products. However, none of those certificates is dated before this lawsuit was filed on September 15, 1987. Apart from these certificates, plaintiff has produced no evidence of any other federally registered trademarks or copyrights in its possession.

The conduct of at least three (3) of Haan Crafts' former employees may have some bearing on this case. The first, Linda Trost, left her employment at Haan Crafts sometime in mid-April of 1987. She was immediately employed by Craft Masters beginning April 20, 1987. Her job at each company was primarily to design the sewing kits. Trost was obviously intimately acquainted with the Haan Crafts designs and before she left she became aware of the new designs which were going to be introduced in the Haan Crafts 1987–88 catalog.

A second former employee, Sharon Salm stayed with Haan Crafts until August of 1987. After giving notice to Haan Crafts but before leaving there, she began working in the evenings at Craft Masters. It is unclear exactly how long Salm was "moonlighting" but it appears to have been from one to three weeks at least.

A third former employee of Haan Crafts was Davina Ward. Ward went to work for Craft Masters immediately after Haan terminated her on Friday, September 4, 1987. A few days after she was terminated, Ward was discovered in the Haan Crafts building taking patterns of certain designs from the instructions files. Robert Haan, who caught her, took the materials from her at that point. Ward claims she was taking her own designs for her employment portfolio. In any case, the designs did not leave the building in Ward's hands.

Two final details should be mentioned. First, all of the Haan Crafts' and Craft Masters' designs are basically simple. That is, technically and artistically, the designs are uncomplicated and rather ordinary in appearance. Second, there is no question that plaintiffs themselves copy extensively, at least at the beginning of their design process. Ideas for many kits come initially from scrutinizing patterns already on the market or from taking apart various store-bought items and figuring out how they are made. Then Haan Crafts makes slight variations in style and size to produce the final kit.

### III.

Before a preliminary injunction may issue:

A plaintiff seeking a preliminary injunction must demonstrate: (1) a threat of irreparable harm without an adequate remedy at law; (2) some likelihood of success on the merits of the claim; (3) a balance of relative harm weighing in favor of granting the injunction; and (4) compatability (sic) of the injunction and the public interest (citations omitted).

*Naked City, Inc. v. Aregood*, 667 F.Supp. 1246, 1252 (N.D.Ind.1987); *Chicago Board of Realtors v. City of Chicago*, 819 F.2d 732 (7th Cir.1987); *accord, BeerMart Inc. v. Stroh Brewery Co.*, 633 F.Supp. 1089, 1104 (N.D.Ind.1986), *rev'd on other*

*grounds,* 804 F.2d 409 (7th Cir.1986); *Lafayette Beverage Distributors v. Anheuser–Busch,* 545 F.Supp. 1137, 1146 (N.D. Ind.1982); *Eaton Corp. v. Appliance Valves Corp.,* 526 F.Supp. 1172 (N.D.Ind. 1981), *aff'd* 688 F.2d 842 (7th Cir.1982).

■ The Supreme Court of the United States in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), held:

> The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits.

*Id.* at 931, 95 S.Ct. at 2568. The decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the district judge; there is no "right" to obtain a preliminary injunction. *Naked City,* 667 F.Supp. 1252. See also *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 905–06 (7th Cir.1986); *Adams v. Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois,* 801 F.2d 968, 971 (7th Cir.1986); *Amoco Production Co. v. Village of Gambell,* —— U.S. ——, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987).

■ In considering a motion for preliminary injunction, the district court must evaluate the four required factors as listed above, must make factual determinations on the basis of a fair interpretation of the evidence before the court, and must draw legal conclusions in accord with a principled application of the law. *Darryl H. v. Coler,* 801 F.2d 893, 898 (7th Cir.1986) *citing Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1438 (7th Cir.1986); see also *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–388 (7th Cir.1984).

■ The "likelihood of success factor" is to be balanced against the "balance of harm factor." *BeerMart,* 633 F.Supp. at 1104 *citing Lawson,* 782 F.2d at 1434. The more heavily the balance of harm weighs in favor of the plaintiff, the degree with which the plaintiff must demonstrate likelihood of success on the merits decreases and vice versa. *Id.* None of the four factors is controlling; the court must weigh them all together in an attempt to reach a just result, that will maintain the status quo pending final resolution on the merits and that will avoid the error that is more economically costly in the particular circumstances. *Id.*

### 1. Likelihood of Success on the Merits

■ Plaintiff sets forth two distinct theories of federal law to support its claim.[1] Each will be discussed separately to determine plaintiff's likelihood of success on the merits.

Plaintiff first contends that defendant violated Title 15 U.S.C. § 1125(a), a provision of the Lanham Act which protects against two types of denominated "unfair competition": false designations of origin and false descriptions or representations related to products entering the stream of commerce. *Shen Manufacturing Co., Inc. v. Suncrest Mills, Inc.,* 673 F.Supp. 1199, 1201 (S.D.N.Y.1987). The provision protects both registered and unregistered trademarks, as well as words, symbols and designs used in the packaging of a product, commonly known as "trade dress." *Id.* See also *General Electric Co. v. Speicher,* 676 F.Supp. 1421, 1428 (N.D.Ind.1988).

Plaintiff claims violation of § 1125(a) under several theories. First, it claims that defendant infringed its common law trademark, which is a picture of its "Rocky" kit in its assembled form. Next, plaintiff claims a general trade dress infringement whereby defendant has allegedly created a

1. Plaintiff also makes three state law claims in addition to its federal law claims. Those are: (1) unfair competition; (2) violation of the Uniform Trade Secrets Act, IC 24–2–3–1 *et seq.* and (3) tortious interference with a business relationship. For purposes of this order which addresses only plaintiff's preliminary injunction motion, this court will limit its "likelihood of success on the merits" analysis to the two federal claims. If plaintiff's federal law claims have no merit at all, this case has no business in federal court as there is no diversity. If the federal claims *do* have merit, the "likelihood of success" analysis based solely on the federal claims should give this court enough of a foundation to decide the preliminary injunction motion.

likelihood of confusion by using a similar catalog, similar product line, and several very similar finished products. Finally, plaintiff contends it has been harmed by defendant's false advertising. These three § 1125(a) theories will each be discussed separately.

■ The common law trademark claim may have slight potential merit. Plaintiff's use of a picture of its "Rocky" character on its advertising postcards and on its most recent catalog on the back outside cover adjacent to the company's name, address and phone number, could constitute a common law trademark entitled to the protection of § 1125(a). The actual usage of a symbol to identify the goods of a plaintiff and distinguish them from others' products is an important factor to consider in determining the validity of a common law mark. 1 J.T. McCarthy, *Trademarks and Unfair Competition.* § 16:1 (2d ed. 1984). The more often a mark is used in business, the stronger the mark becomes and the greater the owner's legal rights in that mark grow. *Id.* It is unclear from the evidence just how often the picture of "Rocky" was used as a symbol of Haan Crafts. It is certainly possible, however, for such a symbol to rise to the status of a common law trademark.

■ Plaintiff's trade dress claim also may have some valid potential of success. Because a product's "trade dress" encompasses its overall image, the court must determine infringement under § 1125(a) based on the total look of the products in question. *Vaughan Mfg. Co. v. Brikam International, Inc.,* 814 F.2d 346, 348 (7th Cir.1987); *Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966 (11th Cir.1983) (trade dress involves total image of product); *Warner Bros. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981) (The underlying purpose of section 43(a) is to protect both consumers and competitors from a wide variety of misrepresentations of products and service, implicating a broad spectrum of marks, symbols, design elements and characters). To enjoin a competitor's use of a particular trade dress, a plaintiff must show that his own trade dress has acquired a secondary meaning and that there is a likelihood that defendant's use of similar trade dress will confuse the public. *Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 448–49 (4th Cir.1986), *citing* 1 J.T. McCarthy, *Trademarks and Unfair Competition,* § 8:01–:2 (2d ed. 1984). However, secondary meaning need not be proven if the trade dress is inherently distinctive. *Vaughan,* 814 F.2d at 348 *citing Blau Plumbing, Inc. v. S.O.S. Fix-it, Inc.,* 781 F.2d 604, 608 (7th Cir.1986).

■ It is doubtful that plaintiff can claim it sells a distinctive product. Stuffed creatures and items are extremely common. Although plaintiff may produce a few unique variances, plaintiff admits it designs virtually all of its kits from products which are already on the market. Plaintiff contends, however, that its products are unique because, although the finished kits are similar to common products which abound in the marketplace, plaintiff is the only manufacturer of such items offered as sewing kits. This court cannot agree that the fact that these products are sold as sewing kits makes them distinctive. If the trademark or trade dress is not distinctive, plaintiff must prove secondary meaning. Although some courts presume secondary meaning where a junior competitor copies the senior competitor, the Seventh Circuit recently rejected that view stating that intentional copying was merely probative of secondary meaning. *Vaughan,* 814 F.2d at 349. There is no question that defendant copied plaintiff's designs to some extent. Under *Vaughan,* however, secondary meaning is not consequently presumed. This court is not satisfied that plaintiff's products have acquired secondary meaning in the school sewing kit market whereby its products are associated so closely with plaintiff that there is a likelihood that defendant's use of similar trade dress will confuse plaintiff's customers.

■ Just two of plaintiff's kits can possible be excepted from the above trade dress analysis. Those are plaintiff's "Fuzzy Foot" and "Fancy Feet." Fuzzy Foot comes in pink or tan and is fifteen (15) inches high. The Fancy Feet kit produces

a pair of feet, available in either pink or blue. They are eleven (11) inches high. Plaintiff's original ad design for Fuzzy Foot, which was published in plaintiff's 1986–87 catalog, showed a picture of one pink foot with the printed words "tickle, tickle" next to it. Defendant's pink stuffed furry foot was shown in its catalog as a pair of 13–inch feet, identified only as "tickled pink." Plaintiff's *pair* of furry feet, known as "Fancy Feet" was new to plaintiff's catalog for the 1987–88 school year. This court must conclude that defendant copied plaintiff's design before it entered the public domain and represented the design as its own. Obviously, plaintiff's "Fancy Feet" kits could not have acquired secondary meaning since they were new in the 1987–88 catalog. But this court finds them distinctive in spite of defendant attorney's lame statement in court that there are 400,000,000 feet in this country.

Plaintiff's last § 1125(a) theory of harm is its false advertising claim. Plaintiff first alleges that it is harmed competitively because defendant apparently offers the same or larger product at a lower price but in fact, the finished product is smaller than advertised. Defendant admits that the product measurements were inadvertently misrepresented due to defendant's inexperience in the sewing kit-producing business. According to defendant, the material shrunk, causing the finished product to be smaller than expected. Plaintiff rejects this explanation because, it asserts, fabric does not shrink uniformly so the finished product would be somewhat distorted if shrunken fabric were used. Plaintiff's point is well taken. However, whether or not defendant *intended* to falsely misrepresent the measurements of the finished product is irrelevant for purposes of § 1125(a). *Johnson & Johnson v. Carter-Wallace*, 631 F.2d 186, 189 (2d Cir.1980) (Statute does not require proof of intent to deceive). Plaintiff need only show that defendant's advertisements were false and that, as a result, there is a likelihood of injury to plaintiff. Proof of actual harm is not required. *Id.* at 189–190; 2 J.T. McCarthy, *Trademarks and Unfair Competi-*

*tion*, § 27:4(D) (2d ed. 1984). Plaintiff alleges that because defendant has advertised a slightly larger product at a lower price, customers will be persuaded to purchase defendant's product. However, plaintiff's allegation, without more, is simply not convincing. It is based on a theory that "bigger is better." Plaintiff has offered no proof that its customers prefer a slightly larger product.

Plaintiff also alleges harm as a result of defendant's stuffed foot advertisement. Defendant's ad is a picture of two pink feet. The kit which is currently being sold, however, contains pattern and materials for only one foot. Although this court will not assume that "bigger is better", it must find that a false "two-for-the-price-of-one" claim would be damaging to plaintiff's business. The court therefore finds only a slight probability for success on the merits based on plaintiff's false advertising claim, *except* with respect to the furry pink foot kits. In the case of those items, plaintiff's likelihood of success on the merits appears to be very substantial.

Although this court finds that plaintiff's arguments under § 1125(a) have merit, it must emphasize that plaintiff still has a tough row to hoe in proving § 1125(a) infringement. In spite of the very broad provisions of this section, some basic theories of competition work to prevent plaintiff's ultimate success on the merits, leaving this court with the final impression that plaintiff's potential for success under § 1125(a) is slim. Defendant copied plaintiff's business methods as well as its products. But plaintiff also copies. Business ideas and products which have been introduced to the public are in the public domain and may be freely copied unless they are legally protected by registered trademark, patent or copyright. 1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 1:1 (2d ed. 1984). It is permissible in a competitive economy for the second comer to try and capture as much of the first comer's market as it can. However, such competition must not be accomplished by infringing exclusive legal rights or by confusing customers into mistakenly purchas-

ing the product, thinking it to be that of the first comer. *Id.* at § 1:15. Even if the first comer's product is not protected by registered patent, trademark, or copyright, a suit for unfair competition under § 1125(a) is not precluded. *Ebeling & Reuss Co. v. International Collectors Guild, Ltd.,* 462 F.Supp. 716, 720 (E.D.Pa. 1978). The difficulty from the court's point of view is distinguishing between "fair" imitation and "unfair" infringement. *McCarthy, supra* at § 1:15. It is difficult to see how defendant's behavior is wrongful if plaintiff's is not, except perhaps, with respect to defendant's probable copying of plaintiff's "Fancy Feet" kit *before* it was introduced to the public.[2] If plaintiff can show that its "Fancy Feet" idea was original and not yet in the public domain, plaintiff may succeed in proving infringement, if not under § 1125(a), then at least under its state law unfair competition claim which encompasses a much broader area of wrongdoing than § 1125(a).

Plaintiff's second federal law claim is based on Title 17 of the United States Code which covers the law of copyrights. A copyright can be valid even if it is not registered if certain requirements are met.[3] However, a lawsuit for copyright infringement cannot be filed unless plaintiff has a *registered* copyright. 17 U.S.C. § 411(a). This is a jurisdictional requirement which must be satisfied before a federal court can entertain a copyright infringement claim. *Dodd v. Fort Smith Special School District No. 100,* 666 F.Supp. 1278, 1282 (W.D.Ark.1987).

Plaintiff claims that a certificate of registration dated before or *within* five years after first publication of the work constitutes prima facie evidence of the validity of the copyright under 17 U.S. C. § 410(c). This is true to a certain extent. However, this section must be read in conjunction with 17 U.S.C. § 411(a). The registration must have been obtained *before* the suit was filed. If that requirement is satisfied, *then* the certificate is prima facie evidence of the validity of the copyright if it was obtained within five years after first publication of the work. Plaintiff's certificates were obtained after the suit was filed and plaintiff's complaint was amended to expressly reference the copyright registrations at issue. There is a serious question, then, whether this court even has jurisdiction of plaintiff's copyright claim. Some district courts have permitted a copyright infringement suit to proceed even when registration is made after filing of the complaint, as long as plaintiff amends its complaint after registering to allege registration. *C. Blore & D. Richman, Inc. v. 20/20 Advertising,* 674 F.Supp. 671 (D.Minn.1987); *Frankel v. Stein and Day, Inc.,* 470 F.Supp. 209, 213 (S.D.N.Y.1979), *aff'd without op.* 646 F.2d 560 (2d Cir.1980). Although this circuit has not yet specifically adopted this position, this court believes that such a rule makes perfect sense. It certainly is consistent with Title 28 U.S.C. § 1653 which allows defective allegations of jurisdiction to be amended in the trial or appellate courts. Even if plaintiff has registered its copyrights, to succeed on a copyright claim, plaintiff must also have attached notice of copyright on all publicly distributed copies of the protected item. 17 U.S.C. § 401(a); *Eastern Publishing and Advertising, Inc. v. Chesapeake Publishing and Advertising, Inc.,* 831 F.2d 488, 490 (4th Cir.1987).

---

2. Plaintiff also claims that its striped sweatshirts were copied by defendant before they were introduced by plaintiff. This claim is much harder to swallow. As defendant points out, the "rugby" stripe has been popular for some time.

3. "Federal copyright for works created after January 1, 1978 is obtained automatically upon creation of a work. But such copyright can be forfeited for failure to properly mark publicly distributed copies with the required copyright notice when the work is published anywhere under the authority of the copyright owner. In the event of a failure to comply, a copyright owner may be able to "save" the copyright by fitting within one of the statutory exceptions. Copyright notice comprises the three elements of: (1) the letter c in a circle or the word "Copyright" or "Copr"); (2) the year of first publication of the work; and (3) the name of the owner of copyright in the work or a recognizable abbreviation or generally known alternative designation." 1 J.T. McCarthy, *Trademarks and Unfair Competition,* § 6:6 (2d ed. 1984) (footnotes omitted)

Plaintiff's catalogs do carry notices of copyright, as required by 17 U.S.C. § 401(b) which appear on the bottom inside front cover of each catalog. Also, at least some of plaintiff's sewing kits contain copyright notices on the pattern and on the instructions. Plaintiff, then, can satisfy the conditions precedent to bringing a copyright infringement suit.

■ To succeed in a copyright infringement action, plaintiff must show ownership of the copyright, originality of the work, copying of the work by the defendant and substantial degree of similarity between the two works. *Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889, (7th Cir.1986) *certiorari denied*, — U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 383 (1986). There is little doubt plaintiff can show defendant copied and that there is a substantial degree of similarity between its works and defendant's works. There is plenty of evidence to substantiate those elements.

■ As to the ownership requirement, plaintiff has apparently complied with statutory formalities of copyright and there appears to be no serious question that the works are copyrightable. However, originality is also required. *Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222, 225 (D.C.Md.1981) (*citing* Nimmer, *The Law of Copyright*, § 13.01(A)). This is where plaintiff runs into some serious problems. As noted previously, plaintiff's products are basically copied from other designs, with minor changes. The Seventh Circuit has stated that, in order for a work to meet the requirement of originality so as to be copyrightable, it must possess independent origin and a minimal amount of creativity; however, the work need not be novel, but must embody some modest amount of intellectual labor. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 668 (7th Cir. 1986) *cert. denied*, — U.S. ——, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1986). This court is not completely persuaded that all of plaintiff's creations are original. However, it admits that there is some likelihood plaintiff could show originality under the Sev-

enth Circuit criteria. This court finds that plaintiff's "Fancy Feet" and "Rocky" sewing kits *do* possess the requisite originality and therefore there is a substantial likelihood plaintiff could succeed on its copyright infringement action as to these two items.

■ It is unlikely plaintiff could succeed in its catalog copyright infringement claim. Although mail order catalogs are copyrightable, copyright infringement is often difficult to prove due to the factual nature of the material in the catalog. *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485, 491 (9th Cir.1985) ("catalogs, by definition, are saturated with facts, numbers, and literal depictions of concrete objects.") The court in *Cooling Systems* stated that similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed. *Id.* citing *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir.1984) *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1985). The fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity. *Cooling Systems*, 777 F.2d at 491. In mail-order catalog copyright infringement actions, the court must look not to the substantial similarity of the entire catalog, but at the substantial similarity of the very small amount of protectable parts. *Id.* at 493. This court has scrutinized the catalogs and cannot find substantial similarity in the protectable parts.

### 2. Threat of irreparable harm without adequate remedy at law

Plaintiff basically asks this court to enjoin defendant's entire business. The harm to defendant if this court issues the requested preliminary injunction is obvious: defendant will have to cease its entire operations, thereby, at best, forfeiting the opportunity to turn a potential profit. At worst, defendant could "lose its shirt." The threat of irreparable harm to defendant is therefore great. Of course, as plain-

tiff points out, defendant could publish a new catalog in August, which would contain all new, non-infringing sewing kits designs, but this is hardly an easy option. The harm to defendant in terms of the costs involved in developing an entirely new line of items is still great.

Plaintiff, on the other hand, has a firmly established business. Many of plaintiff's claims of infringement are questionable as detailed above. Plaintiff operates on a selling year which begins in August and presumably ends with the school year. It is obvious that, at least for the 1987–88 school year, the majority of plaintiff's and defendant's orders must have already been filled. An injunction at this point seems rather futile.

The alleged harm, for the most part has been done. Plaintiff, it would seem, would be entitled to damages if it could prove the merit of its claim. This court finds that plaintiff has an adequate remedy at law in the nature of damages. If plaintiff can prove infringement, damages could be readily calculated based on plaintiff's decreased sales of particular protected items compared to any sales by defendant of the corresponding infringing items.

There is one exception to the above finding. In the case of the Fancy Feet kit, this court finds that, because this was a new item which plaintiff had hoped to establish as a unique offering, associated with plaintiff's business and because defendant knowingly and deliberately thwarted plaintiff's efforts by copying and introducing the same item at the same time, plaintiff has suffered irreparable harm for which there is no adequate remedy at law.

### 3. Balance of Harm

In considering a motion for a preliminary injunction, a district judge must choose the course of action that will minimize the costs of being mistaken. *American Hospital Supply v. Hospital Products, Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986). If the judge grants the preliminary injunction to a plaintiff who it later turns out is not entitled to any judicial relief— whose legal rights have not been violated—

the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant while it is in effect. If the judge denies the preliminary injunction to a plaintiff who it later turns out is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the denial of the preliminary injunction does to the plaintiff. *Id.* Balancing plaintiff's chances of success on the merits, with the threat of irreparable harm to the defendant, this court must conclude that the course of action that will minimize the costs of being mistaken is to deny the preliminary injunction except with respect to the "Fancy Feet" and the "Rocky" sewing kits. In those two cases, this court finds that plaintiff's chance of success on the merits are great and, balanced against defendant's potential harm, this court finds that the course of action that will minimize the costs of being mistaken is to enjoin defendant's sales of its "Tickled Pink" and "Rockette Man" sewing kits. This finding is based particularly on the fact that, in the case of a likely copyright infringement, irreparable harm to plaintiff is presumed. *See, e.g., Joseph J. Legat Architects, P.C. v. U.S. Development Corp.*, 625 F.Supp. 293, 302 (N.D.Ill. 1985) *citing Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 525 (9th Cir.1984) (other cites omitted). It is also presumed that plaintiff has no adequate remedy at law. *Id.*

### 4. Public Policy

"There is a basic public policy, deep-rooted in our economy and respected by the courts, resting on the assumption that social welfare is best advanced by free competition." 1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 1:1 (2d ed. 1984) *citing Eastern Wine Corp. v. Winslow–Warren, Ltd.*, 137 F.2d 955 (2d Cir. 1943). Certainly, the free market concept with its hard competitive edges, whether one likes it or not, often includes imitation and, indeed, under some circumstances, overt copying. In the ebb and flow of the competitive market process, imitation and copying are not prohibited except in precise

circumstances governed by specific laws. However, balanced against the important public interest of free competition is the interest of the public in not being deceived. *Ebeling & Reuss Co. v. International Collectors Guild, Ltd.*, 462 F.Supp. 716, 721 (E.D.Pa.1978). Because the plaintiff has not demonstrated to this court's satisfaction the likelihood that the public will be confused by defendant's business dealings, it cannot be said that public policy would be served by granting the requested injunction.

### 5. The Clean Hands Doctrine

▇▇ Defendant challenges plaintiff's demand for equitable relief, claiming that plaintiff is not entitled to such relief because it did not come into court with "clean hands." This allegation is based on plaintiff's propensity to copy its designs from others already on the market. Defendant wonders how plaintiff can attack defendant's alleged copying while plaintiff operates under the same mode.

Defendant is correct in asserting that a plaintiff with "unclean hands" cannot demand equity if its unclean hands relate to the same transaction or occurrence for which it seeks relief. *See, e.g., Beermart, Inc. v. Stroh Brewery Co.*, 804 F.2d 409, 413 (7th Cir.1986). The evidence, however, supports this court's conclusion that plaintiff is guilty of no wrongdoing. Plaintiff may operate on the "edge" in its practice of copying others, but there is no showing that plaintiff has crossed a forbidden line.

### IV.

▇▇ The parties in this dispute have presented this court with some difficult questions. There is such a fine line between permissive copying and illegal copying that courts are often faced with challenging decisions in the areas of trademark, copyright and patent law. In his treatise, *Trademarks and Unfair Competition*, J.T. McCarthy discusses unfair competition generally:

... When asked by his professor to define "unfair competition" a law student answered, "Well, it seems to me that the courts try to stop people from playing dirty tricks." The professor's comment was, "One might spend weeks reading cases and find many definitions less satisfactory than this...."[4]

Perhaps the indefinable nature of the bounds of unfair competition law was best expressed by the judge who stated:

It is easy to tell whether the conduct of the defendant is fair or foul.... One can feel the unfairness better than one can express it from the bench.[5]

This sounds very much like Mr. Justice Stewart's definition of hard-core pornography: "I know it when I see it."[6]

1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 1:3–:4 (2d ed. 1984).

This court, after carefully weighing all of the evidence, concludes that defendants have been "playing dirty tricks." It therefore enjoins defendants Craft Masters, Inc. and its president, Jerald Chitwood, from manufacturing, advertising or selling the kits it calls "Tickled Pink" and "Rockette Man." The "Tickled Pink" kit is enjoined because this court has found a substantial likelihood of success on the merits under plaintiff's false advertising claim and copyright infringement claim with respect to that item. Further, plaintiff has suffered irreparable harm in its loss of the opportunity to be the first comer in the "pair-of-fuzzy-pink-feet-sewing-kit" business.

"Rockette Man" is enjoined because plaintiff has shown a strong likelihood of success on the merits under its copyright infringement claim. Plaintiff's motion for preliminary injunction is hereby GRANTED in part and DENIED in part. IT IS SO ORDERED.

---

4. Chaffee, *Unfair Competition*, 53 Harv.L.Rev. 1289 (1940).

5. *Champion Spark Plug Co. v. Champion*, 23 F.Supp. 638 (D.C.Mich.1938).

6. *Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (concurring opinion).