The PAMPERED CHEF, LTD., Plaintiff,

v.

MAGIC KITCHEN, INC., Defendant.

No. 97 C 1091.

United States District Court,
N.D. Illinois,
Eastern Division.

March 2, 1998.

Nunc Pro Tunc Feb. 25, 1998.

Michael A. Hierl, Kathryn Elizabeth Garipay, Mark Andrew Boruta, Olson & Hierl, Chicago, IL, for Pampered Chef, Ltd.

Robert W. Gustafson, Jenner & Block, Chicago, IL, Thomas Delos Laue, Ungaretti & Harris, Chicago, IL, George Edward Bullwinkel, Eric F. Greenberg, Bullwinkel Partners, Ltd., Chicago, IL, for Magic Kitchen, Inc.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

The Pampered Chef, Inc. (Pampered Chef), a cookware retailer, brought this two-count action against Magic Kitchen, Inc. (Magic Kitchen), also a cookware retailer, in which it alleged that Magic Kitchen has copied the layout, price format, product number format and general appearance of Pampered Chef's catalogs and sales materials, thereby breaching Pampered Chef's exclusive copyrights on those materials (Count I); and that Magic Kitchen has intentionally violated Pampered Chef's exclusive right to use the "trade dress" of its catalog and any colorable imitation thereof in an effort to receive an unfair competitive advantage in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

Defendant Magic Kitchen has moved for summary judgment on both counts. For the reasons stated below, we grant this motion in its entirety.

## BACKGROUND

Pampered Chef, an Illinois corporation formed in 1980, is engaged in the business of distributing and promoting kitchen-related products through home shows, printed publications and a network of kitchen consultants. Doris Christopher (Christopher) is Pampered Chef's president and founder. Today, Pampered Chef has approximately 35,000 kitchen consultants employed on a commission basis and reaps in excess of $200 million in annual sales. In connection with this business, in 1990 Pampered Chef began publishing a catalog to advertise its products and for use by its home consultants during their demonstrations. To date, the following nine catalogs have been published and have all been protected by copyright:

| Title | Registration Number |
| --- | --- |
| The Pampered Chef Catalog (1991) | TX 3 545–739 |
| The Pampered Chef Catalog (1992) | TX 3 545–740 |
| The Pampered Chef Catalog (1993) | TX 3 545–738 |
| The Pampered Chef Catalog Spring/Summer (1994) | TX 4 395–903 |
| The Pampered Chef Catalog Fall/Winter (1994) | TX 4 395–902 |
| The Pampered Chef Catalog Spring/Summer (1995) | TX 4 395–901 |
| The Pampered Chef Catalog Fall/Winter (1995) | TX 4 395–905 |
| The Pampered Chef Catalog Spring/Summer (1996) | TX 4 395–900 |
| The Pampered Chef Catalog Fall/Winter (1996) | TX 4 395–905 |

Magic Kitchen, founded in 1995, also promotes and distributes kitchen-related products through home shows, printed publications and a network of consultants. Its president and founder is Ursula Kaiser (Kaiser). It currently has three employees. In 1995 Magic Kitchen published its first catalog (the 1995 Catalog).

Shortly thereafter, on September 14, 1995, Pampered Chef's attorney, Michael Hierl (Hierl), wrote a letter to Magic Kitchen claiming that Magic Kitchen's 1995 Catalog infringed certain of Pampered Chef's copyrights. On October 10, 1995, George Bullwinkel (Bullwinkel), counsel for Magic Kitchen, met with Hierl and informed him that only 3,000 copies of the 1995 Catalog had been distributed. At this point the parties apparently entered into a temporary "standstill" agreement regarding the distribution of the 1995 Catalog while they tried to reach a more concrete settlement of the dispute. On November 17, 1995, Hierl sent a letter proposing settlement terms to Bullwinkel on behalf of Pampered Chef. Part of the agreement would have permitted Magic Kitchen to distribute no more than 3,000 additional copies of the 1995 Catalog and required that the remaining supply, a total of 96,000 catalogs, be delivered to Pampered Chef for destruction. On December 1, 1995, Bullwinkel responded that Magic Kitchen would continue to distribute the remaining stock of catalogs, apparently without limit, but would extensively redesign its catalog before releasing another issue. At this point the communications between the parties stopped, without a settlement agreement being reached but apparently with a commitment by Magic Kitchen to redesign its catalog. (Magic Kitchen currently acknowledges that it made this promise and claims that the next issue of its catalog was quite different from the 1995 Catalog.) The parties agree that approximately 60,000 issues of the 1995 Catalog were ultimately distributed.

In 1997, Magic Kitchen came out with its "new" catalog (the 1997 Catalog), which in reality is quite similar to its 1995 Catalog. On January 21, 1997, Kaiser sent a copy of the revised Magic Kitchen catalog to Christopher. On February 18, 1997, Pampered Chef filed this lawsuit.

## ANALYSIS

### I. Summary Judgment Standard

A motion for summary judgment may be granted where the pleadings and evidence

present no genuine issues of fact and the movant is consequently entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). The movant must point to those portions of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. The reviewing court shall draw all reasonable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). When it is clear that the plaintiff cannot carry her burden of persuasion at trial on one or more elements, summary judgment is appropriate for the defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Estoppel and Laches

### A. Estoppel

■ Magic Kitchen first argues that Count I of Pampered Chef's complaint is barred by estoppel and laches.[1] "For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment." *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir.1991). In other words, estoppel will only apply in this case if the facts (viewed in the light most favorable to Pampered Chef) reveal that Pampered Chef was aware of the infringing conduct but nonetheless took some action designed to encourage or mislead Magic Kitchen. *See Bourne Company v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir.1993), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 256 (1993).

■ Magic Kitchen first claims that Pampered Chef engaged in misleading behavior and/or caused Magic Kitchen to rely to its detriment when Pampered Chef failed to object to the distribution of the 1995 Catalog. Magic Kitchen claims this alleged "failure" led it to believe that continued distribution of those catalogs would be acceptable. As a result, Magic Kitchen argues that Pampered Chef should be estopped from pursuing any action relating to the 1995 Catalog. We disagree.

The correspondence between the parties' attorneys unambiguously establishes that Pampered Chef believed that Magic Kitchen's 1995 Catalog violated its copyrights and demanded that Magic Kitchen cease its use and distribution of the catalogs immediately. *See* Letter from Pampered Chef's Counsel Michael A. Hierl to Magic Kitchen, September 14, 1995. Although Magic Kitchen is not really specific about how exactly Pampered Chef's behavior was misleading, perhaps it believes Pampered Chef should be estopped because it proposed a settlement that would have allowed 3,000 more of the 1995 Catalogs to be distributed. In the same proposal, however, Pampered Chef demanded that the remaining 94,000 catalogs be delivered to its offices for destruction. In light of these facts we do not think Magic Kitchen could have been mislead into believing that Pampered Chef had no objection to the further use of the 1995 Catalog.

■ Magic Kitchen next argues that when Pampered Chef objected to Magic Kitchen's catalog, its comments were not sufficiently precise and consequently led Magic Kitchen to design a new catalog, which failed to meet Pampered Chef's approval. Magic Kitchen apparently believes that, as a result, Pampered Chef is estopped from attacking the redesigned catalog. Again we disagree. Pampered Chef specifically informed Magic

---

1. The heading of the section in Magic Kitchen's memorandum in support of its motion for summary judgment states that Pampered Chef's "claims" are barred by estoppel and laches. The text of Subsection A on estoppel, however, discusses only the copyright violation. Accordingly, we address the issues of estoppel only as they apply to Count I of Pampered Chef's complaint. The text of Subsection B on laches discusses both Counts I and II of Pampered Chef's complaint and, accordingly, we address this defense with respect to both issues.

Kitchen that any redesigned catalog should have "a different size, a different cover page layout, a different 'welcome' inside cover page layout, different product layout photographs throughout the catalog, different text, and a different back cover page." *See* Michael Hierl's Letter to Magic Kitchen Counsel, November 17, 1995. These demands are not misleading and clearly state what Magic Kitchen would have to do in the next catalog to avoid a copyright infringement suit. Moreover, we fail to see why Magic Kitchen believes it was Pampered Chef's responsibility to provide Magic Kitchen with guidance on designing a non-infringing catalog. In any event, if Pampered Chef had actually agreed that a new catalog meeting its demands would be immune from a copyright infringement claim, and if Magic Kitchen had actually designed a new catalog according to those standards, then perhaps Magic Kitchens' argument would prevail. Neither of these events, however, came to pass. Consequently, we find nothing about Pampered Chef's behavior, or Magic Kitchen's reasonable expectations, that would lead us to conclude that Pampered Chef is estopped from bringing this case.

**B. Laches**

■ Defendants also argue that the doctrine of laches applies to bar Pampered Chef from bringing this action. Magic Kitchen argues that Pampered Chef waited until February 1997 to bring the instant action, when the original alleged violation occurred two years earlier in 1995, and that this delay caused prejudice to Magic Kitchen.

We do not agree that this delay was impermissible. First, as the Seventh Circuit has observed, "[t]wo years has rarely, if ever, been held to be a delay of sufficient length to establish laches." *Piper Aircraft Corporation v. Wag–Aero, Inc.*, 741 F.2d 925, 932 (7th Cir.1984). In this case, the period at issue is actually less than two years (from September 1995 to February 1997). Second, the essence of the doctrine of laches is to prevent potential plaintiffs from making "unreasonable, inexcusable, and prejudicial" delays in bringing their actions. *Piper*, 741 F.2d at 932. It was not until the publication

of Magic Kitchen's 1997 Catalog that Pampered Chef realized Magic Kitchen had not extensively revised its catalog, and an amicable resolution of the situation was consequently improbable. At that point, Pampered Chef promptly brought this action, which is consequently not barred by laches.

**III. Count I: The Claim for Copyright Infringement**

**A. Copyright Generally**

■ Copyright laws are designed to give people an incentive to produce new work and to allow those who do to collect the reward for their creation. *Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.*, 768 F.2d 145, 148 (7th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986). Once a copyright is placed on original material, there are limits on who else may use the material and for what purposes. In order to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a valid copyright and illicit copying by the defendant. *Wallace Computer Serv. v. Adams Business Forms*, 837 F.Supp. 1413, 1416 (N.D.Ill.1993). Defendant Magic Kitchen contends that plaintiff has failed to produce sufficient evidence in support of its infringement claim and thus defendant is entitled to summary judgment as a matter of law. We agree.

**B. Scenes A Faire**

■ Magic Kitchen first argues that Pampered Chef's copyright cannot extend to the contents and images contained in the catalog. Thus, as a preliminary matter, we must determine whether Pampered Chef's catalog and the images it contains can even properly be made the subject of a copyright. Magic Kitchen argues that the photographic materials contained in Pampered Chef's catalog are beyond the reaches of copyright protection because they are "scenes a faire," or images which must necessarily appear in a certain manner when being used for a certain purpose and, for that very reason, are beyond the reaches of copyright law. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982), *cert. denied*, 459 U.S. 880, 103 S.Ct.

176, 74 L.Ed.2d 145 (1982). Thus, Magic Kitchen claims that when putting together a kitchen supply catalog there are certain core ideas that must be logically represented: fruit cutters must appear with fruit, cookie trays with cookies, cake pans with cake, egg beaters with eggs, pie pans with pies, bread pans with bread, and pizza cutters with pizza. Of course, we agree. Egg beaters whipping pizza, ice cream scoops reaching into bread molds and fruit cutters demonstrated on cream pie would do a poor job of conveying the form and function of the various catalog products. There must, however, be an infinite number of ways to arrange those things even while keeping the logical pairing of like-with-like. Indeed, every cooking catalog makes the same kind of pairs to display their goods. *See, e.g.*, Defendant's Exhibit S1, *The Wooden Spoon Catalog, October 1995*, Defendant's Exhibit S2, *Betty Crocker, Making a Home Housewares Collection, Spring 1997*, Defendant's Exhibit S3, *Chef's Catalog, Holiday 1995*, Defendant's Exhibit S4, *Cookin' the American Way*.

Thus, we find that although the placing of a pie in a pie tin may be a "scene a faire" in that as a concept every kitchen supply catalog logically must do the same thing because the two ideas are inextricably linked, it is clear that the type of pie, the crust pattern, the angle, the garnish and the nature and placement of things surrounding the pie are by no means fixed. Rather, these other elements differ from catalog-to-catalog. We consequently hold that the pictures in Pampered Chef's catalogs are not "scenes a faire." The catalogs and the images they contain are subject to the copyrights held by Pampered Chef, who is entitled to maintain an action for their violation.

## C. The Second Element of Infringement: Illicit Copying

█ The parties do not dispute the fact that Pampered Chef held valid copyrights over its catalogs. Thus, in order to prevail on its motion for summary judgment, defendants must prove that plaintiffs failed to produce evidence in support of the second element of its copyright claim: the requirement of illicit copying. In order to prove

that defendant illicitly copied the material at issue, plaintiff must show that the defendant had access to the copyrighted work, and that the work under scrutiny is "substantially similar" to the copyrighted work. *Wildlife Express Corporation v. Carol Wright Sales Incorporated*, 18 F.3d 502, 508 (7th Cir.1994), *quoting Atari, Inc.*, 672 F.2d at 614 (7th Cir.1982). In this case it is clear that Magic Kitchen had access to the Pampered Chef catalogs: not only were they publicly circulated but the two companies had worked together for some time and were obviously aware of each other's products. Thus, the only element truly in dispute is whether the two catalogs are "substantially similar."

█ In the Seventh Circuit two items are considered substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook [the differences] and regard their aesthetic appeal as the same." *Wildlife Express*, 18 F.3d at 509, *quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). Courts also consider whether the allegedly infringing material captures the "total concept and feel" of the protected work. *Runstadler Studios, Inc. v. MCM Ltd. Partnership*, 768 F.Supp. 1292, 1297 (N.D.Ill.1991). In applying these tests the court must "take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by copyright," and the establishment of such parameters requires an analytical dissection of the material at issue. *Id.* at 1297, *quoting Atari, Inc.*, 672 F.2d at 614. As Judge Shadur has observed:

[A] side-by-side comparison [of the allegedly infringing and original works] is really not the right one to make. Rather, the trick is to begin with the allegedly aggrieved work in one hand and nothing in the other hand and ask "Is it copyrightable? And if so, in what respects? To what extent?". Those limiting questions define whether a comparison need to be made at all and, if so, also defines the universe for such a comparison.

*Sassafras Enterprises, Inc. v. Roshco, Inc.*, 889 F.Supp. 343, 348 (N.D.Ill.1995) (footnotes omitted). Thus, Magic Kitchen is correct in

arguing that before determining whether an infringement has occurred, we must determine which aspects of the catalog are subject to copyright protection. *See, e.g., Haan Crafts Corp. v. Craft Masters, Inc.,* 683 F.Supp. 1234, 1243 (N.D.Ind.1988) (noting that in catalog actions the court must "look not to the substantial similarity of the entire catalog, but at the substantial similarity of the very small amount of protectable parts"). In doing so, we further observe that different types of material may be subject to varying degrees of copyright protection. Materials that are primarily fanciful, complex, artistic, novel and original are generally the most strongly protected by copyrights, as they tend to be almost entirely the products of the author's creativity, rather than concomitants of relatively simplistic, factual, or universal themes frequently encountered in the public domain. *See Atari, Inc.,* 672 F.2d at 617; *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 347–48, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Due to their highly factual nature, catalogs generally fall towards the less-protected end of the spectrum. *Cooling Systems and Flexibles v. Stuart Radiator,* 777 F.2d 485, 491 (9th Cir. 1985) ("catalogs, by definition, are saturated with facts, numbers, and literal depictions of concrete objects"), *overruled on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). As a result, courts have consistently observed that where catalogs are concerned, the "similarity of expression may have to amount to a verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." *Haan Crafts,* 683 F.Supp. at 1243; *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir.1984), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Sassafras Enterprises, Inc.,* 889 F.Supp. at 347.

Applying these principles to the instant case, we note that the shape, size and general subject matter of a catalog clearly cannot be made the subject of a copyright. Consequently, Pampered Chef cannot rely on those similarities between Magic Kitchen's catalog and its own. More creative elements of the catalog, however, are subject to Pampered Chef's copyright.

For example, the text of the "mission statement" appearing on the inside of the front cover and the "satisfaction guarantee" on the inside of the back cover of Pampered Chef's catalogs are certainly original, protectable works. It is the actual text, however, not the concept of having a mission statement or a satisfaction guarantee, that is protected. *See Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("protection is given only to the expression of the idea—not the idea itself"). A reading of the two Magic Kitchen catalogs shows that its mission statement and guarantee are not copies of those appearing in Pampered Chef's catalogs and, in fact, are generally no more or less similar than similar types of statements frequently seen in other catalogs. The same applies to the two companies' slogans appearing on the catalog covers.

Additionally, although the arrangement of products in catalog photographs may be protectable, *Haan Crafts,* 683 F.Supp. at 1243, it is the specific image captured in the individual photograph that is protected, not the subject matter of the photograph generally. *Wallace Computer Services, Inc. v. Adams Business Forms, Inc.,* 837 F.Supp. 1413, 1417 (N.D.Ill.1993) (applying the principal that "[c]opyright protection does not extend to ideas-only to specific expressions of an idea" to catalog and advertisement photographs).

For purposes of the instant case, we first observe that although Magic Kitchen's catalogs have some photographs similar to those in Pampered Chef's catalog, none of the photographs is identical to any protected photograph, and most of the photographs are quite different. The fact that none of the photographs is identical is particularly important because both companies carry very similar lines of inventory, most, if not all, of which appear to come from the same suppliers. For copyright purposes, this means that not only must we analyze the photographs at issue as part of a catalog (which are already at the lower end of the copyright-protected scale due to their primarily factual and only nominally artistic/creative nature), but we

must also take into account the fact that the photographs in the two companies' catalogs are often representations of identical, fairly mundane objects and will thus unavoidably bear a considerable amount of similarity to each other. This combination leads us to believe that Pampered Chef's copyright infringement could only lie if the photographs complained of were almost perfectly identical to those in its own catalog, and we find that none of the photographs complained of meets this level of scrutiny. It must be remembered that there is an important, but subtle, difference between using someone else's good marketing concepts (the ideas) and stealing their original work (the expression of the ideas).

A look at some of the photographs at issue in this case might help to clarify these points. Pampered Chef claims that the 1995 Magic Kitchen Catalog cover violates its copyright on the 1992 Pampered Chef Catalog. Both have a strawberry dessert on the front and a whipped cream press that was used to decorate the cake. The dessert on Magic Kitchen's catalog is not identical to Pampered Chef's, however, and the does not have the eggs, wire whisk and pump tips present in the Pampered Chef. Obviously, Pampered Chef cannot copyright the concept of strawberry desserts on catalog covers, or even the combination of those various products. What it can copyright is that particular photograph of the products. Magic Kitchen's photograph has some similar and some different elements, but cannot be said to be an "almost verbatim" representation of Pampered Chef's cover. The marketing concepts are similar; the images, however, are hardly identical. Accordingly, Magic Kitchen's cover does not violate Pampered Chef's copyright.

In a photograph in Magic Kitchen's 1997 Catalog, there is a pizza on a pizza stone with a cutter, spatula and hand-held multi-grater. Pampered Chef claims this photograph violates one that appears in its 1994 Catalog and contains a pizza on a pizza stone, cutter, wedge-shaped spatula and a cookbook. Again, the marketing concepts are similar, but the photographs are not the same. Thus, we find that Magic Kitchen's photograph does not violate Pampered Chef's catalog.

To summarize, the primary elements of Pampered Chef's catalogs that are covered by its copyright are the text on the front cover, back cover, the descriptions of products and the photographs. It is not the ideas contained within these portions of the catalogs, but the particular expression of those ideas as displayed in the catalogs that are covered. The textual materials have clearly not been copied—that is shown by a simple reading. Some of the photographs are similar and are therefore a slightly more difficult topic, but they must be analyzed in light of the fact that they are largely non-creative, factual representations of products common to both companies. Having undertaken such an analysis, we find that Pampered Chef has failed to show the catalogs are "substantially similar" for copyright purposes. Accordingly, Magic Kitchen's motion for summary judgment on Count I is granted.

## IV. Trade Dress

Defendant also moves for summary judgment on Count II. In Count II Pampered Chef alleges that Magic Kitchen intentionally violated Pampered Chef's exclusive right to use the "trade dress" of its catalog and any colorable imitation thereof, in an effort to receive an unfair competitive advantage in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

We first observe that the general purpose of the Lanham Act is to provide a "federal remedy for the particular kind of unfair competition that results from false designation of origin or other false representation used in connection with the sale of a product." *Schwinn Bicycle Co. v. Diversified Products Corp.*, 740 F.Supp. 517, 518–19 (N.D.Ill.1990), *citing WSM. Inc. v. Hilton*, 724 F.2d 1320, 1331 (8th Cir.1984). This includes attempts at misrepresentation of origin by attempting to free ride on a competitor's already-developed customer good will and loyalty by making products so similar in appearance to those of the competitor that the public will mistake the imposter for the original. *See August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 619–20 (1995). That prac-

tice is known as "misappropriation" of trade dress.

The concept of "trade dress" is broad, and refers to the total image of a product, including features such as size, shape, color or color combination, texture graphics, or even particular sales techniques. *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 935 (7th Cir.1989), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). In order to prove trade dress infringement, plaintiff must establish that its trade dress is "inherently distinctive" or has acquired "secondary meaning," and that the similarity of the defendant's trade dress to that of the plaintiff creates a "likelihood of confusion" on the part of consumers. *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1067–68 (7th Cir.1992), *quoting Roulo,* 886 F.2d at 935. In certain jurisdictions the plaintiff also bears the burden of proving a third element of his *prima facie* case: that the trade dress is "nonfunctional." *See, e.g., Fisher Stoves Inc. v. All Nighter Stove Works,* 626 F.2d 193 (1st Cir.1980); *American Home Products Corp. v. Barr Laboratories,* 834 F.2d 368 (3d Cir. 1987); *First Brands Corp. v. Fred Meyer Inc.,* 809 F.2d 1378 (9th Cir.1987). In the Seventh Circuit, however, functionality is an affirmative defense for which the defendant bears the burden of proof at trial. *Computer Care,* 982 F.2d at 1067–68.

Finally, although courts have recognized that the "trade dress" of catalogs, brochures and other promotional materials designed to generate sales may be protected under the Lanham Act, it should be remembered that while "an owner of a trademark has a right to protect his reputation and good will, the paramount interest promoted by the Lanham Act is the right of the public not to be confused about the origin of goods." *Schwinn Bicycle,* 740 F.Supp. at 519, *citing James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir.1976). Thus, in considering a trade dress claim, the court must balance this consumer interest with the rights of the allegedly wronged competitor and the interest of the public in unfettered competition. *Id.* Where competition is concerned, it must be remembered that the

purpose of the Lanham Act is to prevent "unfair competition" in the form of "palming off," or the practice where one competitor tries to fool the consuming public into thinking that his product is really the product of another. *Id.* As in copyright, the Act is *not* designed to prevent one competitor from admiring someone else's merchandising ideas and using them to gain a competitive edge. *Id.* Finally, although deceptive intent is not the determinative factor, it is clearly relevant and the court should consider whether the allegedly guilty party was attempting to pass his product off as that of another, or whether he was simply using another's admired and proven marketing techniques to competitively enter into the relevant market. *Id.*

Magic Kitchen argues that plaintiff has failed to produce evidence in support of the second element of its trade dress infringement claim (the requirement that the alleged infringing product be "confusingly similar" to the plaintiff's product) and summary judgment in its favor is consequently appropriate. We agree.

In assessing the likelihood of confusion, courts generally examine the following seven factors:

(1) the strength or distinctiveness of the plaintiff's trade dress;

(2) the similarity between the trade dress of the parties' product[s];

(3) the similarity of [the] goods which the trade dress identified;

(4) the similarity of [the] retail facilities and trade channels used to market the two lines of products;

(5) the similarity in advertising used by the sellers of each line of product;

(6) the defendant's intent; and

(7) customer reaction indicating actual confusion.

*Tools USA and Equipment Co. v. Champ Frame Straightening Equipment, Inc.,* 87 F.3d 654 ,661 *citing Pizzeria Uno Corporation v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). Although it is not necessary to prove all seven in order to establish that the plaintiff's and defendant's catalogs are confusingly similar, there must be more than a

"possibility" of public confusion in order for plaintiffs to prevail. *Id.*

We begin by noting that Pampered Chef has failed to produce any evidence of actual customer confusion. There have been no anecdotes, customer surveys or testimony that indicate any specific customer was actually misled. Pampered Chef has had the better part of a year to come up with some such evidence and in its conspicuous absence we are forced to conclude that such evidence is probably not forthcoming. Without such evidence it will be impossible for plaintiffs to prevail on the merits of their trade dress infringement claim and extremely difficult for it to survive defendant's motion for summary judgment.

With respect to the other six elements listed above, Pampered Chef's evidence in support is weak on some, nonexistent on others. Regarding the first three factors, as we pointed out earlier, the trade dress of Pampered Chef's catalog is not markedly different from other cooking catalogs. These catalogs come in all sizes, shapes, layouts and formats. Some contain mission statements, proprietor photographs and customer guarantees; all have photographs of their products paired together with other related products or with the food on which the product is intended to operate. In these respects, then, Magic Kitchen's catalog is no more or less similar to Pampered Chef's catalog than are other cookware retail companies. It is true that some of the photographs are similar, but as noted earlier, these are only a few out of many photographs and none is identical. Moreover, the parties are retailing almost identical product lines and thus similar appearance in some cases is inevitable.

We also observe that Magic Kitchen's name clearly and unequivocally appears in large, bold font on the front of its catalog (a name which does not appear to be confusingly similar to or a play on "Pampered Chef"). This necessarily makes us seriously doubt whether it could be accused of attempting to "palm off" its catalog as Pampered Chef's or trying to confuse the public into thinking that the latter company was the origin of its two catalogs.

With respect to defendant's intent (the sixth factor evaluated in determining likelihood of confusion), even assuming Magic Kitchen took Pampered Chef's catalog and marketing ideas into consideration in creating its own catalog, that is simply not sufficient to establish the requisite intent. In fact, such use, copying and modification of such ideas, is generally permissible and forms the root of competition. As previously discussed, the focus of a trade dress infringement case is on whether customers are confused; whether the defendant's product is so similar to plaintiff's that customers intending to buy plaintiff's products could unwittingly end up with one of defendant's. Thus, the relevant "intent" is not whether defendant intended to use ideas from another's product for use in his own, but whether he intended to pass his product off as that of another in an effort to free-ride off the other's already developed good will, product recognition and customer loyalty.

Finally, although the trade channels (home marketing through local representatives) are similar, as is the advertising used by both companies (catalogs), these are really the only two elements indicating there could be even a possibility of confusion. We consequently find that Pampered Chef has failed to produce evidence sufficient to support this second element of a trade dress infringement claim.

In considering a defendant's motion for summary judgment, plaintiff bears the burden of showing it can support each element of its claim with evidence. Because Pampered Chef has failed to provide evidence sufficient to show that Magic Kitchen's catalog was confusingly similar to its own, summary judgment on Count II is appropriate in favor of defendant, Magic Kitchen.

### CONCLUSION

For the reasons stated above, Magic Kitchen's motion for summary judgment on Counts I and II of Pampered Chef's complaint is granted in its entirety.