**SASSAFRAS ENTERPRISES, INC., Plaintiff,**

v.

**ROSHCO, INC., Defendant.**

**No. 95 C 255.**

United States District Court, N.D. Illinois, Eastern Division.

June 27, 1995.

Alan Goldberg, Barnow and Hefty, P.C., for plaintiff.

James Zalewa, Zeydig, Voit & Mayer, Ltd., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In this action Sassafras Enterprises Incorporated ("Sassafras") contends that Roshco Incorporated ("Roshco") has sought to compete with Sassafras in the market for pizza

stones in violation of both (1) federal false advertising and copyright laws and (2) the Illinois law (both statutory and common law) of unfair competition, deceptive trade practices, fraudulent advertising and dilution. This opinion, however, deals only with Sassafras' federal copyright claim, which is based upon written instructional and promotional materials that accompany its products.

Roshco has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56[1] as to that one claim, both sides have complied with the Rule–56–related requirements of this District Court's General Rule ("GR") 12(m) and 12(n)[2] and the motion is now briefed and ready for decision. For the reasons stated in this memorandum opinion and order, Roshco's motion for summary judgment is granted. Roshco has also asked for an award of attorney's fees. As explained later, that request is denied even though Roshco has prevailed on the merits.

### Facts[3]

In the late 1970's to early 1980's Sassafras began to market a circular stone that it claimed gave pizza prepared at home the same texture and flavor as pizza cooked in a professional brick oven. Consistently with that bold assertion, Sassafras named its product "Superstone." Superstone originally came with a 15–page handwritten booklet containing recipes for pizza, bread and cookies and directions for the care and use of the product. For example, the Superstone owner was instructed at page 3 "[t]o clean, scrape off all excess food with a spatula or knife and rinse in warm water" and was warned (to avoid needless concerns) "The

stone will darken gradually as it is used." Still on page 3, the booklet also contained language designed not so much to instruct as to excite the consuming public (and presumably thus to promote sales) by drawing upon the history of breadmaking and the advantages of cooking on stone:

> Superstone will turn your oven into a professional baker's brick oven. The Egyptians baked bread in the sun on rocks. The village bakers of Europe baked the peoples dough in their brick ovens. Most of today's pizza ovens are brick-lined. The even heat distribution and moisture absorption of the stoneware will produce a crustier crust and a lighter bread. More of the dough is exposed to the oven's heat.

Though the record does not reflect when Sassafras began to use the 15–page booklet, it registered its copyright effective October 23, 1991.

Sometime later Sassafras replaced its 15–page booklet with a 4–page typewritten pamphlet containing recipes for pizza, biscuits and scones and slightly modified directions for the use and care of Superstone. For example, after giving essentially the same directive as to the proper technique for cleaning (scrape and rinse), the 4–page work admonishes: "Do not use soap as this will leave a soapy aftertaste." Sassafras has not made the 4–page work the subject of copyright registration.

Roshco entered the pizza stone market in 1994 with its own product, the somewhat less ambitiously named "Pizza Stone." Pizza Stone comes with a 4–page pamphlet contain-

1. Familiar Rule 56 principles impose on movant Roshco the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to nonmovant Sassafras (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there).

2. GR 12(m) and (n) are designed to facilitate the resolution of Rule 56 motions by highlighting the existence or nonexistence of factual disputes. GR 12(m) requires each Rule 56 movant to sub-

mit a statement of assertedly uncontested facts, with citations to the record in support of each such fact. Then GR 12(n) requires the nonmoving party to respond point by point, with citations to the record in support of (1) any claimed disputes as to the movant's version of facts and (2) any additional facts that the nonmovant chooses to assert.

3. What follows is not of course a set of this Court's factual findings, but rather a scenario that credits the pro-Sassafras evidence with the required reasonable inferences. With that understanding, the account can avoid the awkward and tedious repetition of such qualifying terms as "allegedly" and "Sassafras claims" or the like.

ing a pizza recipe and instructions for the use and care of the product. Rochso's pamphlet mirrors the contents of both Sassafras's written works in several respects. It instructs that to clean the stone one must "remove baked on foods with a spatula and rinse in warm water [and] not use soap or detergent, as they may leave a soapy aftertaste." It also warns "The stone will darken gradually and retain some staining with use." And it too includes a little puffery:

> Professional bakers long ago discovered the superior quality of foods baked in a brick-lined oven. The Roshco Pizza Stone enables you to enjoy the advantages of brick oven baking in your own kitchen. Made of ceramic, the pizza stone absorbs excess moisture and distributes heat evenly for a crust as light and crispy as those made by your favorite pizzeria.

Sassafras claims that Roshco's 4–page pamphlet violates its copyrights to both the 15–page and 4–page works.

### Copyright Infringement

■ This case presents a familiar scenario: Established concern (Sassafras) is threatened in existing market (pizza stones) by competitor (Roshco) and responds by filing suit asserting unfair competition and a number of related claims, including copyright infringement of written materials accompanying the product. In terms of the copyright infringement claim, *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295, 113 L.Ed.2d 358 (1991) teaches that Sassafras must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." And in those respects the familiar scenario is controlled by an equally familiar rule: Absent verbatim or near-verbatim copying, no infringement exists because (1) language describing what a product does and how it is used is generally noncopyrightable and (2) even where it is, infringement can be demonstrated only by precise copying.

Both of those rules flow from the application of one of copyright law's most venerable concepts—the idea v. expression distinction—to writings designed to instruct consumers on the proper use of a product. This opinion turns to the two rules seriatim, demonstrating that each of them defeats Sassafras' claim.

*Copyrightability*

■ *Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 710–11 (7th Cir. 1972), a dispute between manufacturers of female deodorants, has thoughtfully addressed the copyrightability of promotional and instructional materials accompanying consumer products. Here is what the label located on the back of Alberto–Culver's spray can said (*id.* at 710 n. 2):

> FDS is the most personal sort of deodorant.
>
> This unique spray is made expressly for the external vaginal area.
>
> FDS protection is dry, refreshing and gentle to delicate tissues.
>
> Use FDS regularly to remove any fear of odor.

Alberto–Culver claimed copyright infringement by this legend on the back of the Andrea Dumon can (*id.*):

> Personal Spray, the deodorant of the most personal kind. This spray is used exclusively for the external vaginal region.
>
> Personal Spray should be used regularly to eliminate any and all odors.
>
> Personal Spray is refreshingly fresh all day long.

Our Court of Appeals (then Judge, now Justice, John Paul Stevens writing for the panel) held that Alberto–Culver's back label was noncopyrightable because a text that is really descriptive of a product does not merit protection (*id.* at 711). In so doing, the Court of Appeals reversed a portion of the District Court's opinion that had found the phrase "the most personal sort of deodorant" copyrightable (*id.*). Accord, *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675, 678–79 (1st Cir.1967).

Although *Alberto–Culver* does not express the idea v. expression contrast in just those terms, the opinion's conclusion as to the noncopyrightability of descriptive test is plainly drawn from the existence of that dichotomy—from the concept that copyright protection extends to the expression of an idea but

not to the idea itself (17 U.S.C. § 102;[4] and *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954) ("protection is given only to the expression of the idea—not the idea itself")). In a simplistic example of the concept, if Shakespeare were alive today and had just written *Romeo and Juliet* he could copyright the play, but later authors would of course be free to develop the theme of ill-fated love between young man and young woman into the authors' own masterpieces (or their own non-masterpiece movie scripts).

No simple rule exists for distinguishing ideas from their expression. Drawing the line is necessarily a flexible exercise, having to accommodate an enormous variety of factually diverse situations (e.g., *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507–11 (7th Cir.1994) (stuffed animal duffle bags); *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614–20 (7th Cir.1982) (video games); *Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 532–38 (5th Cir.1994) (management training materials); *Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 138–42 (5th Cir.1992) (real estate ownership maps); *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488–89 (9th Cir.1984) (Scrabble strategy handbooks); *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 120–23 (2d Cir.1930) (one of the many extraordinarily splendid and insightful opinions by Judge Learned Hand, this time opining on claimed infringement of a dramatic comedy))).

In all such line drawing, copyright law seeks to strike a "delicate equilibrium" between "afford[ing] protection to authors as an incentive to create, and [ ] appropriately limit[ing] the extent of that protection so as to avoid the effects of monopolistic stagnation" (*Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 696 (2d Cir.1992)). *Alberto–Culver*'s determination that the expressive element of that manufacturer's back label

was nil accorded substantially heavier weight to the concern that neither side should gain an unwarranted economic advantage, as against the relatively minuscule need to provide manufacturers in a tight market with an incentive to describe and promote their products. Comparably, in this case it is hard to imagine that without the expectation of copyright protection Sassafras would have refused to devote its time and effort to draft instructions on the care and use of Superstone. Instead that effort was really compelled by the realities of the marketplace and the nature of the product.

*Feist Publications,* 499 U.S. at 344–51, 111 S.Ct. at 1286–90 provides additional insight into why the idea v. expression dichotomy compelled the result in *Alberto–Culver* and calls for an identical outcome here. *Feist* emphasized that the sine qua non of copyrightability is originality and that, in the context of fact-based works, the originality requirement can be satisfied either (1) by "cloth[ing] facts with an original collocation of words," in which case "[o]thers may copy the underlying facts from the publication, but not the precise words used to present them" (*id.* at 348, 111 S.Ct. at 1289) or (2) by "select[ing] and arrang[ing] the facts" in an original manner (*id.* at 349, 111 S.Ct. at 1289). Just as in *Feist,* the copyrightability of factual compilations has been heavily litigated elsewhere, with the outcome turning on the amount of skill and discretion involved in the selection and arrangement of the underlying data (see, e.g., *Illinois Bell Tel. Co. v. Haines & Co.,* 932 F.2d 610 (7th Cir.1991); *Schroeder v. William Morrow & Co.,* 566 F.2d 3, 4–7 (7th Cir.1977); *Edwards & Deutsch Lithographing Co. v. Boorman,* 15 F.2d 35, 35–37 (7th Cir.1926); *Weissmann v. Freeman,* 868 F.2d 1313, 1322 (2d Cir.1989); *Eckes v. Card Prices Update,* 736 F.2d 859, 862–63 (2d Cir.1984)).

To the extent that Sassafras' booklet and pamphlet concern the use and care of Super-

---

4. Here is that section's statutory statement of the dichotomy:

   (a) Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression....

   (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

stone, they lack originality in both respects and are therefore noncopyrightable. Nothing in the selection and arrangement of that information exhibits the requisite level of skill and discretion, and the particular language chosen is not marked by a legally cognizable level of originality. Cleaning and other instructions dictate themselves and flow from the characteristics and intended use of the product, not from the imagination of any independent author. Recipes fall into the same category for the same reasons. And the other content must also be denied copyright status. By recalling Egyptian and medieval times Sassafras gained no right to exclude others from referring to the history of breadmaking in their later works.

None of this is meant to denigrate the authors' preparation of the Sassafras literature. They dispatched their assigned task—a description of the care and use of Superstone—with ability, professionalism and obvious good cheer. This Court's ruling that the special demands of copyright law are not met is no reflection on the quality of the work generally or on its value to Sassafras in depicting Superstone as an attractive and useful consumer product.

*Precise Copying*

■ Sassafras' claim has thus failed under the first prong of the standard two-part test for copyright: the requisite showing of copyrightability. That alone would suffice to defeat the claim, but further analysis demonstrates that Sassafras loses independently on the second prong (the "copying" element) as well. On that score, "[b]ecause direct evidence of copying is often unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work" (*Atari,* 672 F.2d at 614; accord, *Wildlife Express,* 18 F.3d at 510–11). Where fact-based works are involved, "substantial similarity" generally exists only where there has been a verbatim or near-verbatim copying. And that is not the case here.

*Landsberg,* 736 F.2d at 488 (citation omitted) illustrates the point in dealing with an allegedly infringing Scrabble strategy handbook:

> One consequence of the policy in favor of free use of ideas [codified in 17 U.S.C. § 102(b) ] is that the degree of substantial similarity required to show infringement varies according to the type of work and the ideas expressed in it. Some ideas can be expressed in a myriad of ways, while others allow only a narrow range of expression. Fictional works generally fall into the first category.

> \* \* \* \* \* \*

> Factual works are different. Subsequent authors wishing to express the ideas contained in a factual work often can choose from only a narrow range of expression. For example, [plaintiff]'s work states that "[t]he poor player simply attempts to make as many points as possible each turn." The idea contained in that statement cannot be expressed in a wide variety of ways. Just about any subsequent expression of that idea is likely to appear to be a substantially similar paraphrase of the words with which [plaintiff] expressed the idea. Therefore, similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed. 1 M. Nimmer, *Nimmer on Copyright,* § 2.11[A]–[B] (1968).

Accord, such cases as *Affiliated Hosp. Prod., Inc. v. Merdel Game Mfg. Co.,* 513 F.2d 1183, 1188–89 (2d Cir.1975); *Decorative Aides Corp. v. Staple Sewing Aides Corp.,* 497 F.Supp. 154, 157–58 (S.D.N.Y.1980)).

Here Roshco expresses many of the same ideas as Sassafras, but it alters the precise language and in so doing avoids infringement. Perhaps the same result might not have followed comparably modest changes to the text of a play or other work of fiction. But where as here an author's options are limited by the need to present the same facts and to describe identical processes, all that can reasonably be expected is that he or she avoid the parroting or near-parroting of the earlier language. Roshco did that, and copyright law requires nothing more.[5]

---

5. Two points about copyright registration warrant mention. First, because Sassafras has not

348

*Attorney's Fees*

█ Roshco has also asked for an award of attorney's fees under the discretionary authority conferred by 17 U.S.C. § 505. *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) has made it clear that the standard for such an award is the same for plaintiffs and defendants, referring (*id.* at —— n. 19, 114 S.Ct. at 1033 n. 19) to the Third Circuit's exemplary set of non-exclusive factors as an aid toward exercising that discretion: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."

On the one hand, it would be a relief if manufacturers of deodorants, cooking utensils and other products would stop claiming copyright protection for the descriptive components of their labels, pamphlets and other instructional materials. Nine times out of ten copyright law will not protect that sort of literature, and the infringement claim acts as an impediment to the expedited resolution of the balance (if any) of the litigation. It is also a worrisome prospect that if used in that fashion, copyright law can serve primarily as a means of harassing competitors.

But on the other side of the coin, Roshco does seem to have modeled at least parts of its pamphlet after Sassafras' works (especially the shorter 4–page version). Perhaps a side-by-side comparison—with Sassafras's 4–page pamphlet in the left hand and Roshco's in the right—would have evoked a "yes" answer to the question "Is there substantial similarity?" And that possibility would pretty much negate most of the factors mentioned in *Fogerty.*

It is true, of course, that the suggested type of side-by-side comparison is really not the right one to make. Rather the trick is to begin with the allegedly aggrieved work in one hand and nothing in the other hand and ask, "Is it copyrightable? And if so, in what respects? To what extent?" Those limiting questions define whether a comparison needs to be made at all [6] and, if so, also define the universe for such a comparison.[7]

Neither side has addressed the issue in such a two-step manner (although Roshco's counsel has come reasonably close). Nor is *Alberto–Culver* (which appears to be the closest Seventh Circuit precedent) mentioned in either party's briefs. Those omissions illustrate the unavailability of a slam-dunk decision in this area, in light of which this Court is loath to hold the loser to the winner's costs. In sum, the balance of considerations does not favor a fee award, and Roshco's request is denied.

*Conclusion*

There is no genuine issue of material fact as to either (1) the noncopyrightability of Sassafras' allegedly aggrieved works or (2) the lack of substantial similarity (in the copyright sense) between those works and Roshco's pamphlet. For either of those reasons, and certainly for both, Roshco is entitled to a judgment on the subject of its current motion. Count VI of Sassafras' Complaint is therefore dismissed. However, Roshco's motion for an award of attorney's fees is denied. Finally, this action is set for a next status hearing at 8:45 a.m. July 17, 1995 to discuss

registered a copyright on its 4–page pamphlet, technically it cannot base its current claim on that work (17 U.S.C. § 411). This opinion has not distinguished between the two works because the analysis applies with equal force to both and because Sassafras always has the option of registering the more recent work. Second, a certificate of registration constitutes prima facie evidence of a copyright's validity if made within five years of first publication (17 U.S.C. § 410(c)). Sassafras has not provided a copy of the certificate for the registered 15–page work, and it may well not qualify in those terms, but it has been assumed here that Sassafras is entitled to a rebuttable presumption as to the copyright's validity. However, any such possible presumption has been defeated by this opinion's examination of the work in light of the idea v. expression dichotomy and the originality requirement (see, e.g., *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 908–11 (2d Cir.1980)).

6. If the first question gets a negative answer, of course comparisons become irrelevant.

7. If only a portion of a work is copyrightable, any comparison of its similarity to a claimed infringing work should obviously concentrate on the copyrightable material.

proceedings on the surviving claims in this action.