### FASA CORPORATION and Virtual World Entertainment, Plaintiffs,

v.

### PLAYMATES TOYS, INC., Defendant.

#### No. 93 C 2445.

United States District Court, N.D. Illinois, Eastern Division.

April 1, 1998.

---

860

Karen Beth Ksander, Catherine Ann Van Horn, Sonnenschein, Nath & Rosenthal, Liza Marie Franklin, City of Chicago Law Dept., Chicago, IL, for Plaintiffs.

Paul R. Garcia, U.S. Attys. Office, Mark Van Buren Partridge, David C. Hillard, Brett A. August, Marianne E. Ryan, Maxine S. Lans, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, Jack D. Samuels, Attorney at Law, Donald L. Samuels, Samuels & Samuels, Los Angeles, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This is the fourth and hopefully last opinion this Court will issue in this hotly contested copyright and trademark lawsuit. It is the Court's sincere hope that this opinion, which addresses prevailing defendant Playmate Toys, Inc.'s ("Playmates") request for attorneys' fees against the losing plaintiffs, FASA Corporation and Virtual World Entertainment ("FASA"), will once and for all end this litigation, which involved the parties' copyright and trademark rights to their respective robot-like battlefield characters and toys.

### Relevant Facts

This lawsuit pre-exists this Court's tenure. This Court received this trademark and copyright case in May of 1994. The facts surrounding this lawsuit are adequately set forth in the prior three opinions this Court has already written in this case: *FASA Corp. v. Playmates Toys, Inc.*, 869 F.Supp. 1334 (N.D.Ill.1994) ("*FASA I*") (partially granted and partially denied defendant's motion for summary judgment); *FASA Corp. v. Playmates Toys, Inc.*, 892 F.Supp. 1061, 1070 (N.D.Ill.1995) ("*FASA II*") (rejected Playmates' affirmative defense of waiver); and *Fasa Corp. v. Playmates Toys, Inc.*, 912 F.Supp. 1124–74 (N.D.Ill.1996) ("*FASA III*") (Court's findings of fact and conclusions of law, which entered judgment for Playmates on FASA's remaining trademark and copyright claims). The Court will assume that the interested readers of this opinion have familiarity with the Court's prior three opinions and will not repeat all the facts contained in those opinions herein.

### Procedural History

This Court has previously addressed the issue of Playmates' attorneys' fees and, in the exercise of its discretion, has consistently declined to make such an award. Initially, after exhaustively reviewing the extensive evidence presented by the parties at trial, and preparing numerous drafts of a complex and detailed opinion resolving vigorously contested issues, the Court concluded:

> The bottom line in this case is that Playmates made a conscious business decision that it could proceed with the development of its EXO–SQUAD toy line after it had been given access to the BATTLETECH designs without the necessity or cost of obtaining a license from FASA. After extensive and undoubtedly costly litigation, this business decision has been found by this Court not to violate FASA's legal rights. Nevertheless, the Court believes that the facts of this case do not warrant the imposition of any costs upon FASA for seeking to vindicate its legally protectible rights. This case is dismissed with prejudice with both sides to bear their own costs.

*FASA* III, 912 F.Supp. at 1174.

Thereafter, at Playmates' request, the Court clarified that its initial decision was intended to deny not just costs, but also attorneys' fees:

> The only reason I'm making a record about this is to tell you that I've considered the case. I considered it very closely. I considered it against the standards that are set by the Lanham Act and the Copyright Act for attorneys' fees, and it was not an accident by any sense of the word that I indicated that the parties are to bear their own costs, which I fully interpreted to mean attorneys' fees.
>
> I cannot conclude in good faith that those standards have been met, whether or not we're talking about the Trademark Act, and we're talking about the *B[ASF] Corp. v. Old World Trading Company,* which is the Seventh Circuit case in 1994, 41 F.3d 1081, or whether or not I look to the Supreme Court's case in *Fogerty v. Fantasy, Incorporated,* 114 S.Ct. at 1023 (1994) or whether I look at the way Judge Shadur

has interpreted that in *Sassafras Enterprises,* 889 F.Supp. 343, and some of the Third Circuit and Second Circuit cases that I've taken a look at. I'm very mindful of the fact that this was an expensive piece of litigation. I'm very mindful of that, and I learned, I am telling you, the hard way about how much evidence was before the Court and how many nuances there were to that evidence, and it is with all of those things in mind that I'm going to deny your motion for attorneys' fees and deny your motion for clarification.

Transcript of February 13, 1996 Hearing at pp. 2–3.

This matter is now back before the Court because on appeal the Seventh Circuit indicated it was unable to ascertain the standard used by the Court in exercising its discretion to deny fees:

> Although we think it possible that the district court applied the proper legal standard and did not abuse its discretion in denying Playmates its fees, we have reluctantly concluded that the court's order may also have been based on a misapprehension of the standard for copyright cases established in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). We therefore remand the case to the district court so that it may reconsider or clarify its order in light of this standard.

*FASA Corp. v. Playmates Toys, Inc.,* 108 F.3d 140, 141 (7th Cir.1997). The facts in this case have not changed since the Court made its two previous rulings. After a careful evaluation of the parties' post-remand briefs on the remaining attorneys' fees issue, this Court does not see any reason to change its view that Playmates is not entitled to attorneys' fees under the circumstances presented by this case. Thus, the Court issues this fourth opinion to clarify its prior orders that denied Playmates its attorneys' fees.

### Analysis

In compliance with the Seventh Circuit's opinion, Playmates has limited its request for attorneys' fees at this stage of the litigation

to the Copyright Act.[1] The Copyright Act of 1976 provides in relevant part that in any copyright infringement action "the court may... award a reasonable attorneys' fee to the prevailing party as part of the costs to be determined in the Court's discretion." 17 U.S.C. § 505 (1996). The United States Supreme Court has admonished that fees should not be awarded as a matter of course, but in light of various equitable factors, keeping in mind the purpose of the Copyright Act and treating prevailing plaintiffs and prevailing defendants alike. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). In *Fogerty*, the Court rejected the frequently used "dual standard", according to which prevailing plaintiffs were generally awarded attorneys' fees as a matter of course, while prevailing defendants had to show that the original suit was frivolous or brought in bad faith. However, the Court also rejected the "British Rule", which automatically awards attorneys' fees to any prevailing party. The Court held that the statutory use of "[t]he word 'may' clearly connotes discretion. The automatic awarding of attorneys' fees to the prevailing party would pretermit the exercise of that discretion." 510 U.S. at 532.

The *Fogerty* Court instead emphasized that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion" in an even-handed manner. *Id.* at 534. The Court cited with approval a nonexclusive list of factors to guide the district court's discretion in awarding attorneys' fees. These non-exclusive factors, originally listed by the Third Circuit in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir.1986), include frivolousness, improper motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence. 510 U.S. at 534 n. 19. The *Lieb* factors have been expressly endorsed in this Circuit. *See Budget Cinema,*

*Inc. v. Watertower Associates, Inc.*, 81 F.3d 729, 730 (7th Cir.1996).

■ At this stage of the litigation, the parties have concentrated on these non-exclusive *Lieb* factors in addressing the pending issue of attorneys' fees. After careful consideration of each of these factors and the purposes of the Copyright Act, this Court concludes that Playmates is not entitled to recovery of its attorneys' fees.

### A. This Case Was Far From Frivolous.

■ The Court acknowledges that there is no requirement that Playmates establish any level of FASA's culpability in order to obtain attorneys' fees. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir.1996) (affirmed district court's discretionary award of attorneys' fees to prevailing defendant after Supreme Court remand). Yet, this Court still has the discretion to evaluate the merits of the underlying dispute without reliance on the ultimate outcome of the case. In fact, the Ninth Circuit has indicated that a true even-handed approach to the issue of attorneys' fees in a copyright action would begin on an evenly balanced scale, without regard to whether the plaintiff or defendant prevailed, and thereafter determine a party's entitlement to fees. *See Fogerty*, 94 F.3d at 560.

A review of the facts in this case, as set forth in our opinion in *FASA* III, shows that this case was far from frivolous. This Court's findings of fact in *FASA* III readily confirm that this was a very close case, which raised many complex and novel issues of copyright law that required many hours of judicial deliberation and analysis. In short, an objective review of the merits of this litigation without the benefit of the end results shows that plaintiff's case was meritorious.

Furthermore, if one evaluates the actual results of this lengthy and involved litigation, one does not reach the conclusion that Playmates achieved a true victory. Ultimately, FASA successfully resisted the brunt of

---

1. Playmates apparently has waived any claim that it is entitled to its attorneys' fees on the ground that this case was "exceptional" under the Lanham Act. Even if this claim was not expressly waived, this Court would expressly

conclude for all the reasons previously stated and contained herein that this case is not an exceptional case under the Lanham Act. *See BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 (7th Cir.1994).

Playmates' summary judgment motion, prevailed on Playmates' written waiver defense, and successfully established, despite Playmates' efforts to show the contrary, that its creative works were protected by both the Copyright and Lanham Acts. Under these circumstances, this Court concludes that FASA had more success than is typical for a losing plaintiff. *See Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir.1996) (successful copyright defendants denied attorneys' fees in view of strength of plaintiffs' case).

■ Our system of justice does not allow for "hung" bench trial verdicts; the Court's opinion in *FASA* III hinged a great deal on a failure of proof by the plaintiff in a close case. *See, e.g., Soto v. Johansen*, 137 F.3d 980 (7th Cir. 1998) (affirmed bench trial verdict in the classic case of a tie resulting in a win for the party who did not bear the burden of proof). Since FASA had the ultimate burden of proof, its failure to produce a preponderance in its favor rendered FASA unsuccessful at trial. However, this verdict and the Court's resulting opinion in *FASA* III show that this case was far from frivolous.[2]

A post-*Fogerty* decision in this district further confirms that there can be no finding of frivolousness here. In *NLFC, Inc. v. Devcom Mid–America*, 916 F.Supp. 751, 757 (N.D.Ill.1996), Judge Lindberg, expressly adopting a thorough opinion written by Magistrate Judge Ashman, awarded fees to a prevailing defendant in a suit that was "marked by frivolousness since its inception," including an initial dismissal of the complaint pursuant to Rule 11 of the Federal Rules of Civil Procedure. In reaching this conclusion, Magistrate Judge Ashman explained further the characteristics of frivolous litigation:

> While the mere fact that NLFC lost on summary judgment does not alone establish frivolity, the fact that it supplied not a single piece of testimonial evidence at the dispositive summary judgment phase evidences frivolous litigation.... These facts strongly suggest that NLFC had no evidence of any wrongdoing by Devcom but that it based its infringement suit on the

unsupported "concerns and paranoia" of third parties and its own beliefs.

916 F.Supp. at 758–59. Other circuit court cases similarly focus on the strength of plaintiff's case to evaluate frivolousness. *See also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir.1997) (maintenance of copyright claims for three years without any evidentiary basis), *cert. denied*, —— U.S. ——, 118 S.Ct. 1302, 140 L.Ed.2d 468, (1998); *Fosson v. Palace (Waterland) Ltd.*, 78 F.3d 1448 (9th Cir.1996) (fees awarded to a defendant who prevailed on summary judgment because plaintiff's failure to articulate a theory of liability that would connect one of the defendants to the allegedly infringing act rendered plaintiff's claims frivolous); *Edwards v. Red Farm Studio Co.*, 109 F.3d 80, 81 (1st Cir. 1997) (defendants awarded attorneys' fees where plaintiff artist unilaterally and unreasonably rejected a two decade practice with her publisher); *Diamond Star Building Corp. v. Freed*, 30 F.3d 503 (4th Cir.1994) (defendant awarded attorneys' fees where district court concluded that plaintiff's case was of absolute insignificance and should never have been brought).

Unlike these cases, the record here demonstrates that FASA had significant evidence of access and substantial similarity prior to filing its complaint; this prevents any finding of frivolous action here. *See FASA III*, 912 F.Supp. at 1151–54, 1167–74. The Court finds that an objective evaluation of the merits of FASA's case strongly supports a denial of attorneys' fees to Playmates.

**B. Objectively Unreasonable Conduct Is Absent In This Case.**

The record in this case does not establish "objective unreasonableness" under any conceivable definition of the term. Playmates prevailed only after an intensive two-week trial containing many complex issues that required extensive review and analysis by this Court. There is no need to further review the factual and legal merits of this

---

**2.** The Court squarely rejects Playmates' contention that an evaluation of frivolousness is not an appropriate *Fogerty* factor. *See* 510 U.S. at 534 n. 19.

lawsuit. *FASA* III speaks for itself and its analysis is incorporated herein.

In its oral ruling denying Playmates' request for attorneys' fees, this Court expressly relied on both the Supreme Court's opinion in *Fogerty* and the opinion of this Court's esteemed colleague, Judge Shadur, in *Sassafras Enterprises, Inc. v. Roshco, Inc.*, 889 F.Supp. 343 (N.D.Ill.1995).[3] *Fogerty* has already been discussed herein. In *Sassafras*, Judge Shadur granted summary judgment to a copyright defendant, holding that certain written instructional and promotional material was not sufficiently original to be copyrightable. Yet, Judge Shadur, applying the *Fogerty* standards, denied the prevailing defendant any discretionary award of attorneys' fees. 889 F.Supp. at 347–48. Judge Shadur concluded that the prevailing defendant appeared to have modeled part of its challenged pamphlet after plaintiffs' work to the extent that the two works appeared substantially similar. Judge Shadur also noted that the lack of clear legal precedent in the applicable area illustrated "the unavailability of a slam-dunk decision." *Id.* at 348. These considerations left Judge Shadur "loath to hold the loser to the winner's costs." *Id.*

Similarly, in *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729 (7th Cir.1996), the Seventh Circuit applied *Fogerty's* objective unreasonableness factor to a plaintiff's unsuccessful copyright claim. The Seventh Circuit determined that the record demonstrated that a plaintiff's case against defendants was objectively unreasonable, both factually and legally. The court noted that the plaintiff had filed both its copyright registration and district court complaint without having any ownership interest in the disputed copyright. 81 F.3d at 732. The court further pointed out that there were significant questions about the validity of the copyright and the plaintiff had actively misled the Copyright Office in registering its copyright after the litigation had commenced. *Id.* Finally, the court noted that plaintiff's claimed damages and attorneys' fees were not permitted by the Copyright Act. Therefore, the court concluded that defendants should have been awarded their attorneys' fees after the district court dismissed plaintiff's suit because of plaintiff's flawed copyright interests.

In this case, as shown by the appendices to *FASA* III, *see* 912 F.Supp. at 1175–86, there was a striking similarity between many of FASA's designs and Playmates' challenged toys. This fact, together with the prior access evidence, shows that FASA's litigation conduct was objectively reasonable.

Not all unsuccessfully litigated claims are objectively unreasonable. *See CK Co. v. Burger King Corp.*, 34 U.S.P.Q. 2d 1319, 1320, 1995 WL 29488 (S.D.N.Y.1995) (trial court refused to award attorneys' fees to copyright defendant who prevailed on summary judgment, even though there were no close similarities between protectible elements of works at issue, because plaintiff's arguments to the contrary were not objectively unreasonable). If that were the case, attorneys' fees would automatically be awarded to every prevailing defendant. However, the Seventh Circuit has held that attorneys' fees are not to be awarded in every case. *Budget Cinema, Inc.*, 81 F.3d at 732. For example, in *Garnier v. Andin International, Inc.*, 884 F.Supp. 58 (D.R.I. 1995), a prevailing copyright defendant who had won summary judgment was denied its attorneys' fees. The court, applying the non-exclusive *Lieb* factors, held that plaintiff's case was objectively reasonable and that a careful factual and legal analysis was necessary to resolve the suit. The *Garnier* court pointedly noted:

> Hindsight is not the applicable standard in judging the reasonableness of [plaintiff's] suit, and at the time of initiation, [plaintiff] took a reasonable stand on an unsettled principle of law. To view the plaintiff's conduct retroactively would punish [plaintiff] for litigating a very debatable aspect of the copyright law.

884 F.Supp. at 62. Since the *Garnier* court also found no evidence of improper motiva-

---

**3.** For the sake of completeness, the other unnamed Third and Second Circuit cases relied upon by this Court in its oral ruling were *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir. 1986), and *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559 (2d Cir.1994) (another pre-*Fogerty* decision on appropriate equitable factors to evaluate in awarding potential attorneys' fees to a prevailing copyright defendant).

tion by the plaintiff, it easily concluded that the Copyright Act did not support an award of attorneys' fees. *Id.* at 62–63.

Other district courts have similarly used their *Fogerty* discretion to decline to award attorneys' fees to prevailing copyright parties. *See e.g. Fabrics v. Samsung America, Inc.*, 997 F.Supp. 479 (S.D.N.Y. 1998) (denying attorneys' fees to prevailing copyright defendant); *Brewer–Giorgio v. Bergman,* 985 F.Supp. 1478 (N.D.Ga.1997) (same); *Fred Riley Home Building Corp. v. Cosgrove,* 883 F.Supp. 1487 (D. Kan.1995) (same); *Columbia Pictures, Inc. v. Tucker,* 1997 WL 779093 (N.D.Ill. Dec.11, 1997) (denial of attorneys' fees to prevailing plaintiff), *Roeslin v. District of Columbia,* 921 F.Supp. 793 (D.D.C. 1995) (same). In each of the cases, the courts concluded that the equities of the merits and purposes of the Copyright Act did not support an award of fees to the prevailing party. This Court, in the exercise of its discretion, reaches the same conclusion here.

Indeed, the factual details of a recent case in which a plaintiff's action was determined to be objectively unreasonable underscores the lack of similar behavior here. In *Florentine Art Studio, Inc. v. Vedet K. Corp.,* 891 F.Supp. 532 (C.D.Cal.1995), this Court's distinguished colleague in Los Angeles, Judge Audrey Collins, awarded reasonable attorneys' fees to a defendant (who was guilty of two counts of infringement) because:

> Plaintiff's prosecution of this matter was objectively unreasonable. Before filing suit, plaintiff knew that defendants had redesigned the only two works plaintiff had previously challenged and knew, in addition, that defendants never copied one of the works sued on. Following the seizure of defendants' goods and records, plaintiff knew that a second work sued on had never been copied and that defendants' profits were de minimis. In their November 11, 1993 letter, defendants offered to discontinue the manufacture of seven of the nine statues, and told plaintiff that they had never made or sold the remaining two statues. Further, defendants offered to stipulate to the entry of a permanent injunction on all nine of the statues. Finally, defendants put plaintiff on notice of most of their substantive defenses. These defenses were almost entirely successful at trial.

> Plaintiff also pursued this litigation knowing that in its industry, there are multiple opportunities for innocent copyright infringement. Thus, plaintiff knew that if there was any copying by defendants, it was probably innocent. In addition, plaintiffs knew before trial that defendant Gonul Kurdoglu had no involvement in any copyright infringement. Still, plaintiff insisted on proceeding to trial against her. Finally, there were no complex or novel legal issues in this case which could have justified continuing the action.

891 F.Supp. at 542. There is simply no comparison between the irresponsible actions of Florentine Art Studio and FASA's legitimate pursuit of its infringement claims against Playmates in the instant case.

As the trier of fact, who carefully evaluated the testimony throughout the pretrial proceedings and the three-week trial, this Court expressly concludes that FASA's litigation behavior was objectively reasonable and does not support an award of attorneys' fees to Playmates.

## C. There Was No Evidence of Improper Motivation.

This Court's extensive factual findings in *FASA* III lead to the inescapable conclusion that FASA filed this litigation based upon the reasonable belief that Playmates was infringing FASA's legally protectible rights. If anything, the evidence shows that it was Playmates that pushed the legal envelope to the edge in developing its competitive toys. Playmates had access to FASA's BATTLETECH designs, considered BATTLETECH, and developed a prototype with the working name "BATTLETECH". *See FASA* III, 912 F.Supp. at 1151-52. Playmates ultimately produced a toy line containing at least one toy that both a third-party manufacturer and this Court initially found "to be a virtual replica of the BATTLETECH MAD CAT". *FASA* I, 869 F.Supp. at 1353.

Proof of improper motivation requires substantially more than pulling facts out of context to support assertions of questionable

intentions. For example, in *NLFC*, Magistrate Judge Ashman found evidence of "a bad faith attempt to harm Devcom." *NLFC*, 916 F.Supp. at 760. The *NLFC* plaintiffs "never initiated any discovery whatsoever" and "never even tried to gather any evidence to support its case." *Id.* at 759. There was also a great disparity in the size of the parties: plaintiff NLFC's assets exceeded $1.5 million, while the defendant's assets amounted to little more than $100,000. *Id.* at 760. Unlike *NLFC*, FASA conducted extensive discovery and uncovered significant evidence to support its claims. FASA's uncontested evidence of access alone would bar this Court from finding that FASA's lawsuit was improperly motivated. *See Smith v. Jackson*, 84 F.3d at 1221.

While there was some disparity between the size of the parties in this case, any similarity to *NLFC* ends there. Plaintiff FASA never possessed the ability to economically cripple Playmates—the larger corporate party in this case. Instead, FASA risked a great deal in an effort to vindicate its legally protectible rights, with full knowledge that Playmates would leave no stone uncovered in a full frontal defense of its successful toy line. FASA lost its own recovery of damages and attorneys' fees when it failed to prevail in a close case. Under the circumstances presented by this matter, FASA should not receive any additional financial punishment because of its ultimate failure of proof at trial. Both sides spent millions of dollars in this litigation because of Playmates' ultimate desire to produce a toy line that was similar, but not an exact copy of, FASA's BATTLETECH designs.

This Court concludes that FASA's lawsuit was motivated by a desire to stop Playmates from what it earnestly believed was wrongful copying of works FASA had created. While there is in hindsight no doubt that FASA may have litigated with too broad of a brush, there are absolutely no facts in this Court's prior three opinions that support any factual finding of improper motivation by FASA in bringing its unsuccessful lawsuit. Moreover, this Court expressly finds that the chilling effect of awarding Playmates attorneys' fees would be too great and would impose an inequitable burden on FASA under the particular facts and equities presented by this case. In *Sanford v. CBS, Inc.*, 108 F.R.D. 42, 43 (N.D.Ill.1985), Judge Aspen denied fees to a prevailing defendant in a similar situation because "it would be inequitable to force [plaintiff] into financial ruin for bringing in good faith what appeared to be a legitimate copyright claim." Playmates' argument that *Sanford* is inapplicable because it was decided before *Fogerty* ignores the fact that equitable considerations of this type are precisely what the Supreme Court directed district courts to consider in exercising discretion to grant or deny fees. *See Fogerty*, 510 U.S. at 533–35.

### D. The Purposes Of The Copyright Act Do Not Support An Award Of Fees.

Most importantly, an award of attorneys' fees in this case would not serve to advance the purposes of the Copyright Act because there are no considerations of compensation or deterrence that need to be vindicated here. An award of attorneys' fees to Playmates would serve only to reward its behavior, which was just barely outside the reach of copyright and trademark laws. Such an award would be contrary to the legislative purposes of the federal statutes involved in this case.

An award of fees to Playmates will not serve to promote the ultimate aim of our copyright laws to stimulate artistic creativity for the general public good. *See Fogerty*, 510 U.S. at 525. If anything, an award of attorneys' fees to Playmates under the circumstances presented here would discourage creative entities like FASA from ever seeking to vindicate its rights against a large corporate defendant. In essence, FASA was the party that primarily vindicated the interests sought to be protected in the Copyright Act by establishing the protectible original elements of its works and overcoming Playmates' written waiver defense.

Nor does Playmates' reliance on multiple defenses, some of which were ultimately meritorious, inevitably further creative purposes. Instead, the lesson of this costly litigation is that it may be better to seek a business rather than a litigation solution, before creat-

ing a toy line that is similar to, but not an illegal copy of, a prior product to which the company was previously exposed. Ultimately, this Court determined that Playmates made a conscious business decision to nearly copy the creative works of FASA. Playmates escaped liability only because the manner in which it copied FASA's works was distinct enough to avoid liability and because many of the features of FASA's works were not protectible under the Copyright Act. These technical defenses, while successful, are slight and insubstantial relative to the enormous costs of this litigation to both sides.[4] *See Creations Unlimited, Inc. v. McCain,* 112 F.3d 814, 816–17 (5th Cir.1997) (affirmed district court's decision to decline to award attorneys' fees to copyright defendant who prevailed on summary judgment on basis of lack of substantial similarity between plaintiff's line drawings and defendant's tee-shirts).

### CONCLUSION

The proper exercise of this Court's discretion herein requires the Court to once again reject an award of fees. It is unfortunate that this litigation was prolonged by this attorneys' fees dispute. The Court recognizes that it bears great responsibility by not clearly enunciating the specific basis of its prior denial of attorneys' fees. Perhaps the Court mistakenly sought to avoid writing a fourth opinion in this hotly disputed litigation. Yet, the Court expressly notes that, rather than seek easy clarification from this Court, Playmates' counsel merely thanked the Court at the conclusion of the February 13, 1996 proceeding and proceeded to the appellate court.

Today, almost two years later, this Court corrects its prior mistake and issues its fourth opinion which, in no uncertain terms, indicates that an evaluation of all the legal and equitable factors at the Court's disposal pursuant to its post-*Fogerty* discretion compels this Court to deny Playmates any attorneys' fees in this matter. Playmates pushed the extreme outer limits of non-liability in this case to reap great economic benefits.

Simply put, an award of attorneys' fees to Playmates would not advance any creative purpose sought to be advanced in the Copyright Act. Now Playmates wants to have its close legal victory as its cake and its attorneys' fees as its icing. Playmates instead should be satisfied with the economic profits it reaped from its EXO–SQUAD toys and the fact that its vast attorneys' fees are still currently tax deductible as reasonable corporate business expenses without any clear limitation. This Court cannot and will not give Playmates its cake and icing too because Playmates has simply not convinced this Court that a fee award would equitably advance any creative purpose protected by the Copyright Act.

---

4. The Seventh Circuit's opinion in this case indicated that Playmates had spent over $2.5 million litigating this case. *See FASA,* 108 F.3d at 141. It does not take much for this Court to harbor the safe assumption that FASA has also spent a similar figure litigating this case. In fact, FASA may have spent more because it bore the burden of proof in this matter.